BAILEY ALDRICH, Senior Circuit Judge.
Plaintiffs Harold and Meriba Nadler have appealed from a summary judgment granted in favor of defendant BayBank Merrimack Valley, N.A., a banking institution. The only issue on appeal is whether the court erred in ruling that plaintiffs had failed to show a “genuine issue as to any material fact” necessary to survive Bay-Bank’s Rule 56(c) motion for summary judgment as it applied to Count Two of their complaint. That count alleged that defendant had conducted a secured party, liquidation sale in a commercially unreasonable manner. The question is whether plaintiffs have presented, in admissible form, evidence and warrantable inferences which, if believed, would make out a case. Emery v. Merrimack Valley Wood Products, Inc., 1 Cir., 1983, 701 F.2d 985, 991 (“specific facts ... properly asserted in affidavits and supporting materials”). Every intendment is to be taken in plaintiffs’ favor. Hahn v. Sargent, 1 Cir., 1975, 523 F.2d 461, 464, cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754. Nevertheless, we affirm.
Plaintiffs were officers and stockholders of Port Furniture, Inc. (“Port”), a now bankrupt Massachusetts corporation formed to conduct a retail furniture business in Newburyport, Massachusetts. Pursuant to the establishment of that business, they executed three notes over a sixteen-month period during 1974 and 1975. All three notes provided the basis for the litigation that followed, but only the third is relevant to this appeal. This is a $50,000 demand note with a security agreement for accounts receivable and inventory. Plaintiffs personally guaranteed in writing all of Port’s obligations to the bank with regard to the loan. Port encountered financial difficulties no later than the spring of 1977. Voluntary bankruptcy proceedings followed, and in due course BayBank was granted leave to foreclose on its security interest in Port’s inventory. On June 1 and 2, 1978 one Glickman,- a professional liquidator, conducted a liquidation sale, the gross receipts of which totalled approximately $42,000.
In Count II of their complaint, plaintiffs alleged that, had the sale been run properly, it would have realized $40,000 beyond the amount of their indebtedness, or a gross, we gather, slightly over $100,000. On this motion we are not, of course, concerned with the amount of the damages, but with the question of unreasonableness. Apart from a number of unsupported allegations in their brief, plaintiffs assert two grounds worthy of discussion: (1) that Bay-Bank “knew, or in the exercise of reasonable care should have known, that the furniture was grossly underpriced, even for a liquidatio'n sale;” and (2) that BayBank “refused to permit additional furniture to be brought in and sold at the liquidation sale, with appropriate credit to Port Furniture, as is custom and practice in liquidation sales.”
Before considering the showing, pro and con, we state the legal framework. Two sections of the Uniform Commercial Code are involved. Section 9-504(3), Mass. G.L. c. 106, § 9-504(3), which governs a secured party’s disposition of collateral after default, states that “every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.” Section 9-507(2) offers further guidance in determining commercial reasonableness, and provides, in part:
“(2) The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner....”
*184 Unfortunately, neither the Massachusetts Supreme Judicial Court nor the Appeals Court has construed this section. Clearly, however, the statute forecloses a plaintiff from making a prima facie case merely by showing that the price obtained from a sale was too low, as many courts, including the court below, have recognized. See United States v. Kurtz, E.D.Pa., 1981, 525 F.Supp. 734, 748, aff'd, 688 F.2d 827, cert. denied, 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387; Credit Alliance Corp. v. Cornelius & Rush Coal Co., N.D.Ala., 1980, 508 F.Supp. 63, 68. Such a rule is necessary to prevent every disgruntled debtor from making a jury case by talking price. Thus, although the price obtained may be one relevant factor, see United States v. Terrey, 5 Cir., 1977, 554 F.2d 685, 693, a plaintiff must point to specific deficiencies in the conduct of the sale that render it commercially unreasonable. See In re Zsa Zsa Limited, S.D.N.Y., 1972, 352 F.Supp. 665, 671 (“[T]he primary focus of commercial reasonableness is not the proceeds received from the sale but rather the procedures employed _”) (emphasis in original). Were the rule otherwise it would be difficult to attract lenders who count heavily on the availability of the security.
Defendant supported its motion for summary judgment with, inter alia, a deposition by Glickman to the effect that he was an experienced liquidator; that he had supervised the entire sale and had personally participated in the pricing; that the pricing was “very well done,” that the sale was well advertised, and that the revenue recovered in fact exceeded his expectations. This, prima facie, met the requirements of section 9-507(2). Plaintiffs responded by offering a short affidavit of Meriba Nadler, hereinafter Nadler, and her deposition. Before discussing the latter, we note that while defendant took it, this pretrial interrogation did not waive defendant’s objections to its admissibility as evidence, specifically, to the hearsay nature of many of the answers, or to Nadler’s qualifications to furnish expert opinion.
We deal first with her testimony as to pricing. Nadler stated the wholesale cost of the inventory was about $100,000; the fair market value more than that. “For a going-out-of-business market valué, it would have brought over $100,000.” Glickman, who set the prices and conducted the sale, was “not qualified.” Asked her own qualifications to express these opinions, Nadler’s sole answer was that she was “a furniture person,” amplified in her affidavit to say she had “extensive experience.”
Nadler did not lack for self-confidence. Her summary dismissal of Glickman was in the face of his twenty-seven years in furniture and liquidation. Self-confidence is not enough. The liquidation business requires specialized knowledge as evidenced by Na-dler’s own recognition, in her testimony and briefs, of the need for experts. She advanced, however, no single instance of any personal connection with liquidation sales, either directly or indirectly. Nor was her dismissal of Glickman as a “low priced furniture” man based on personal knowledge; her testimony makes clear that her alleged knowledge of Glickman’s qualifications was based upon hearsay. F.R.Civ.P. 56(e) is demanding and explicit.
“Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... ”
Of course, Nadler could know the wholesale cost of her inventory, and, as in effect the owner, might testify as to fair market value. See Meredith v. Hardy, 5 Cir., 1977, 554 F.2d 764, 765; District of Columbia v. Thirteen Parcels of Land, D.C.Cir., 1976, 534 F.2d 337, 338-41. Also, of coúrse, we assess her qualifications not by whether some individual judge would find her qualified, but simply by whether she had shown enough to allow a willing judge properly to do so. Cf. Kapp v. Ballantine, 1980, 380 Mass. 186, 192, 402 N.E.2d 463. However, there must be some burden on her, and we cannot think unidentified, even “extensive” experience in the *185 furniture business enough to qualify her as an expert on the conduct of liquidation sales or liquidation pricing. Indeed, the simpleness of her testimony would seem an excellent example of why the framers of the U.C.C. adopted section 9-507(2), ante. We recognize the possibility of a case with such an extraordinary discrepancy in the price obtained that eyebrows might be lifted, but the difference here, even accepting fully Nadler’s opinion on market value, cannot be sufficient to overcome the statute’s caveat.
Nadler’s lack of expertise as to liquidation matters became affirmatively apparent when she sought to testify that the sale did not conform to custom in the trade because the liquidator failed to bring in additional furniture to increase buyer interest. She was asked,
Q. How do you know about this custom and practice in liquidation sales?
A. I’m a furniture person.
Q. Would you tell us specifically what this custom and practice is?
A. Usually a professional GOB sale-runner comes in and brings in extra furniture. I don’t know any of the technicalities of it; they just do it. Hamiltons had just done it; right.
[[Image here]]
Q. Was that for purposes of a bankruptcy liquidation sale?
A. Often.
Q. Often?
A. Yes.
Q. Have you ever seen it done in a bankruptcy liquidation sale before?
A. Specifically, let’s see. I’m not really sure. I’ve heard this discussed many times, that it is done, but I can't tell you specifically what companies.
Even passing the lack of personal knowledge and expertise manifested by this passage, we could not read it as meaning that padding was customary, but only as meaning that it was sometimes done. This, without more, is not affirmative evidence that it was unreasonable not to have done it in this instance. Plaintiffs point to evidence showing that BayBank had contemplated doing it in this case as if this were an admission of such. It is not.
We add, because defendant advances it, that there was a rumor that the Attorney General of Massachusetts was investigating whether padded sales might constitute unfair or deceptive trade practices under chapter 93A of the Massachusetts General Laws. We can easily understand apprehension of this if the advertising indicated that Port was the sole source of the inventory. The easy, and we might think necessary, solution would be for the advertising to disclose that it was not. However, plaintiffs assert that Port was known for selling high quality furniture. Whether disclosed padding would add to the attractiveness, and net profits, of the sale would seem a manifest question of fact on which, like everything else, plaintiffs were required to offer affirmative proof. If opinions she quoted from non-testifying individuals could be taken to say this, they were purely hearsay. Plaintiffs having failed to adduce admissible evidence showing that any part of the sale was commercially unreasonable, the judgment of the district court is affirmed.