702 P.2d 781

**Mavis BUCK, Plaintiff-Appellant,**

v.

**Duane ST. CLAIR, M.D., and Does I through V, fictitiously named, Defendants-Respondents.**

No. 15074.

Supreme Court of Idaho.

May 8, 1985.

744

Allen Ellis, of Ellis, Brown, Sheils & Steel, Boise, for plaintiff-appellant.

James Lynch, of Imhoff & Lynch, Boise, for defendants-respondents.

BISTLINE, Justice.

The issue presented on appeal is whether the trial court correctly excluded pursuant to I.C. § 6–1013 the testimony of a nationally board-certified out-of-state obstetrician-gynecologist in a medical malpractice case. We hold it was error to exclude this testimony and remand for proceedings consistent with this opinion.

The plaintiff called as a witness Dr. Anton Broms, a nationally board-certified obstetrician-gynecologist from Portland, Oregon, to testify regarding the standard of care and the defendant's negligence. The defendant objected to this witness on the basis of I.C. § 6–1013. The trial court reluctantly allowed the testimony of this out-of-state witness, noting that he thought there was insufficient foundation for this witness to testify. At the close of plaintiff's case the defendant moved for a directed verdict. In ruling on the motion, the district judge reversed his earlier decision allowing Dr. Broms' testimony and ruled the testimony inadmissible because this

physician did not have actual knowledge of the applicable community standard for a medical malpractice action under I.C. § 6–1013(c). This section requires that the plaintiff's expert witness

> possess professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; provided, this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial.

The trial court concluded that the Portland physician lacked actual knowledge of the Boise standard because he had not practiced in Boise, had not admitted patients to any Boise hospitals, and had not evaluated any area medical facilities, and was not familiar with any local medical literature. A directed verdict in favor of the defendant was granted.

 The ruling by the trial court suggests that the local standard of care for board-certified obstetrician-gynecologists differs from the national standard. We believe that for board-certified specialists, the local standard of care is equivalent to the national standard of care. Our reasons for this decision are simple: board-certified medical specialists are highly-trained individuals who become certified after completing a rigorous training program. Medical schools are accredited by a national team of physicians and administrators. The residency training programs are approved by a single board of specialists, and a physician is certified as a specialist only after passing a nationally administered exam consisting of both oral and written components. The board-certified specialists practicing within the state are the product of nationally designed education programs. The standard of care familiar to any board-certified physician in this state is a national standard of care. We see no reason to believe there is a local standard of care which deviates from the national standard of care for board-certified physicians. Our ruling today is limited to board-certified doctors practicing in the same area of specialty. Hence, a board-certified physician can testify only against another board-certified physician practicing in the same area of medicine: surgeons against surgeons; obstetrician-gynecologists against obstetrician-gynecologists, anesthesiologists against anesthesiologists, and so forth. Our holding is to be construed so as to allow a board-certified physician to testify regarding the standard of care only in cases involving other doctors who are also board-certified in the same specialty. The trial court's conclusion that the Portland obstetrician-gynecologist lacked actual knowledge of the local standard of care is incorrect.

 Our holding today is limited to those physicians who hold themselves out as board-certified specialists. In so doing, we are cognizant of the intent and purpose of the passage of I.C. §§ 6–1012 and 6–1013. Section 6–1012 addresses the proof of community standard of health care practice in malpractice cases, and provides in part:

> Such individual providers of health care shall be judged in such cases in comparison with similarly trained and qualified providers of the same class in the same community, taking into account his or her training, experience, and fields of medical specialization, if any.

We believe the legislature enacted the above language in recognition of the very problem we are addressing today: judging health care providers in comparison to other providers with the same background and training. This section specifically lists fields of medical specialization as a factor to be considered in the proof of community standard. By enacting this section we believe the legislature, in its wisdom, recognized that the standard of care for nationally board-certified specialists was the same throughout our nation and that one board-certified specialist could testify regarding the standard of care against another na-

tionally board-certified specialist practicing in the same area of medicine.

■ We are also mindful of the other elements set forth in I.C. § 6–1012 which require the plaintiff to prove "by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided." Thus, there must be evidence not only on the standard of care, but also on the technology and medical resources available in a particular community. Our ruling today does not impair the burden of proof for the plaintiff. It merely acknowledges that the legislature intended that nationally board-certified specialists can testify regarding the standard of care against other nationally board-certified specialists practicing in the same area of medicine. The residence of a board-certified physician should not be a basis for precluding his or her testimony.

■ Moreover, the legislature was concerned with the disparity between urban and rural areas in terms of availability of medical facilities, education programs, and other specialists when it passed I.C. §§ 6–1012 and 6–1013. And rightfully so for general practitioners and other physicians who do not hold themselves out as board-certified specialists. Our holding today does not impair the protections inherent in I.C. §§ 6–1012 and 6–1013 for these types of physicians. For a general practitioner it is inherently unfair to compare him or her against a board-certified specialist or against a general practitioner who may have available in another area highly sophisticated equipment and technology. However, for those doctors who have elected to specialize, who profess to be specially trained to practice in a particular area of medicine, and who hold themselves out to the public as nationally board-certified specialists, there can be no doubt that any disparity between rural and urban areas has been erased by the standardized training these doctors receive. *See Brune v. Belinkoff,* 354 Mass. 102, 235 N.E.2d 793

(1968); *Ardoline v. Keegan,* 140 Conn. 552, 102 A.2d 352 (1954); *McGulpin v. Bessmer,* 241 Iowa 1119, 43 N.W.2d 121 (1950).

■ I.C. § 6–1013 also provides that a competent expert witness who resides elsewhere can testify if he has adequately familiarized himself with the local standard of care. The trial court ruled that Dr. Broms had not adequately familiarized himself with the local standard of care for Boise. We believe this was incorrect. By virtue of their training, board-certified specialists are familiar with the local standard of care which is equivalent to the national standard of care. In order to meet the requirement of I.C. § 6–1013(c) showing adequate familiarization a specialist must demonstrate two elements: first, that he is board-certified in the same specialty as that of the defendant-physician; this demonstrates knowledge of the appropriate standard of care of board-certified physicians practicing in the specialty in question. Second, an out-of-the-area doctor must inquire of the local standard in order to insure there are no local deviations from the national standard under which the defendant-physician and witness-physician were trained. In the instant case, Dr. Broms testified that he was a board-certified obstetrician-gynecologist, that he was familiar with the standard of care through regular reading of regional and national medical journals, and that he was familiar with the local standard of care. Dr. Broms obtained his familiarity with the local standard through his specialty training combined with his questioning of Dr. Roberge, a Caldwell board-certified obstetrician-gynecologist who told Dr. Broms that the local standard of care was equivalent to the national standard of care. At that point Dr. Broms possessed "actual knowledge of the applicable said community standard" as required by I.C. § 6–1013(c). Furthermore, we believe this degree of inquiry was adequate. Had Dr. Broms been told there was *not* a uniform standard, then further investigation would have been merited. However, Dr. Broms had every reason to believe the statement of a Caldwell obstetri-

cian-gynecologist that there was a national standard of care for physicians practicing in this specialty. Upon learning this, further inquiry was not warranted.

Subsection (c) of I.C. § 6–1013 specifically provides that this section shall *not* be used to prohibit or preclude a competent witness from adequately familiarizing himself with the standards and practices of an area. Dr. Broms testified he was a board-certified obstetrician-gynecologist who had inquired of a local board-certified obstetrician-gynecologist who told him the local standard was the same as the national standard. Hence, his testimony should not have been precluded. Dr. Broms demonstrated his familiarity with the specialty and with the local standard of care which does not deviate from the national standard of care for this specialized area of practice. Nothing more needed to be done to qualify Dr. Broms' testimony.

■ It should be noted that the holding of this case regarding the local standard of care being the same as the national standard of care is limited to nationally board-certified specialists. The protections outlined in I.C. § 6–1013(c) still apply to those physicians practicing in the state who are not certified through a nationally designed process. Because non-certified physicians have not had the national training that certified specialists have had, it is possible that there may be differences in the standard of care at different locales. A general practitioner from an urban area may not have knowledge of the rural standard of care by virtue of his education. Hence, the foundation required to show an expert witness had actual knowledge of the local standard of care for non-certified specialists may be more rigorous.

Reversed and remanded for proceedings consistent with this opinion. Costs to appellant. No attorney's fees on appeal.

HUNTLEY, J., and McFADDEN, J. (pro tem), concur.

DONALDSON, Chief Justice, dissenting.

I dissent. The majority's analysis of I.C. §§ 6–1012 and 6–1013 is flawed in several important respects. First, the opinion itself is internally inconsistent. The majority's holding is that the local standard of care for board-certified specialists is equivalent to the national standard of care, and, thus, that any board-certified specialist has automatic knowledge of the applicable community standard. However, the opinion also states that before a specialist can testify he or she "must inquire of the local standard in order to insure that there are no local deviations from the national standard...." If the local standard is held to be equivalent to the national standard, then, a fortiori, there can be no local deviations. The majority's entire discussion of I.C. § 6–1013(c) and of Dr. Brom's questioning of a local physician as to whether the local standard was the same as the national standard is totally inconsistent with its holding.

Second, the majority's actual holding is in direct contravention of the legislative intent evidenced by the enactment of I.C. §§ 6–1012 and 6–1013, and does not even give lip service to the previous decisions of this Court. In 1976, the Idaho Legislature was faced with an emergency: the escalating costs of medical liability insurance threatened to push the cost of health care beyond the reach of the citizens of the state of Idaho. In an attempt to limit and define the liability of health care providers, and, thus, to control the rising costs of health care, the legislature enacted I.C. §§ 6–1012 and 6–1013.[1] The effect of

1. "It is the declaration of the legislature that appropriate measures are required in the public interest to assure that a liability insurance market be available to physicians, hospitals and other health care providers in this state and that the same be available at reasonable cost, thus assuring the availability of such health care providers for the provision of care to persons in the state. It is, therefore, further declared to be in the public interest that the liability exposure of such health care providers be limited and made more definable by a requirement for direct proof of departure from a community standard of practice." 1976 Idaho Sess.Laws ch. 277, § 1, p. 951.

these sections is to limit a physician's liability to instances where he or she has violated the local community standard of practice.

"In any case, claim or action for damages due to injury to or death of any person, brought against any physician and surgeon or other provider of health care ... plaintiff must, as an essential part of his or her case in chief, *affirmatively prove by direct expert testimony* and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet *the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence of such physician and surgeon, hospital or other such health care provider and as such standard then and there existed with respect to the class of health care provider that such defendant then and there belonged to and in which capacity he, she or it was functioning. Such individual providers of health care shall be judged in such cases in comparison with similarly trained and qualified providers of the same class in the same community, taking into account his or her training, experience, and fields of medical specialization, if any ....*" I.C. § 6–1012 (1979) (emphasis added).

In *Le Pelley v. Grefenson*, 101 Idaho 422, 614 P.2d 962 (1980), McFadden, J., writing for a unanimous Court (including Bistline, J.), considered the statutes at issue in the present case, validated the local community standard of care as being constitutional, and held that there was no retroactive application because the legislature had codified already existing case law, and under prior case law the local community had been the area wherein a practitioner standard of care had always been determined. *Hale v. Heninger*, 87 Idaho 414, 420, 393 P.2d 718, 721 (1964). In *Le Pelley*, 101 Idaho at 427, 614 P.2d at 967, McFadden, J., citing *Willis v. Western Hospital Association*, 67 Idaho 435, 182 P.2d

950 (1947), stated that, to prove malpractice, evidence was required "that the care and attention given to deceased was not such as would have been given by other physicians in good standing in that neighborhood." McFadden, J. also quoted from *Davis v. Potter*, 51 Idaho 81, 2 P.2d 318 (1931): "He 'is bound to bestow such reasonable and ordinary care, skill, and diligence as physicians and surgeons in the same neighborhood, in the same general line of practice, ordinarily have and exercise in like cases.'" *Id.* at 427, 2 P.2d at 967.

In *Maxwell v. Women's Clinic, P.A.*, 102 Idaho 53, 625 P.2d 407 (1981), I stated for the majority that:

"in order to preclude summary judgment in medical malpractice cases, plaintiffs must show that expert testimony has been *offered* by either the plaintiff or defendant which when viewed in a light most favorable to plaintiffs indicates that the defendant has negligently failed to meet the applicable standard of health care practice of the community," *citing Le Pelley. Id.* at 56, 625 P.2d at 410. (Emphasis in original.)

The Court went on to hold that the alleged admission of the defendant doctor did not satisfy the standards set forth in I.C. §§ 6–1012 and 6–1013. Bistline, J., with whom McFadden, J. agreed, dissented from the *Maxwell* decision, deeming that the statements of the doctor satisfied the standards set forth in the statutes. Bistline, J. stated:

"As for the requirements for direct expert testimony set out in I.C. § 6–1013, these do no more than set forth the foundation for expert testimony. To testify for a plaintiff as an expert one must have an opinion to a reasonable medical certainty and one must have the required expertise and knowledge of the community standard. Again, this does no more than codify existing case law." 102 Idaho at 57, 625 P.2d at 411.

Today's majority (which includes Bistline and McFadden, JJ.) chooses to ignore these

decisions and the legislature's express intent in enacting I.C. §§ 6–1012 and 6–1013, holding that any board-certified physician is competent to testify to the local standard of health care practice in any Idaho community. The majority recognizes that the legislature chose to measure a physician's actions against the local community standard because of its concern with the disparity in health care resources available throughout the United States. However, the majority summarily disposes of this concern by concluding that as to board-certified physicians "there can be no doubt that any disparity between rural and urban areas has been erased by the standardized training these doctors receive."

The problem with the majority's reasoning is that it focuses solely on a physician's training to the exclusion of another extremely relevant factor, namely: the availability of medical resources. It is the availability of medical resources—access to modern hospitals and laboratories, opportunities for continuing medical education and training, etc.—that enables a physician to maintain a particular standard of practice. A physician who practices in a rural Idaho community does not have the same opportunities and resources for keeping abreast with medical advances as does a physician practicing in a large, metropolitan area. For this reason, the legislature has chosen to measure a physician's actions against those of similarly trained professionals in the community in which he or she resides. I cannot join in the majority's decision to abrogate what I perceive to be the legislature's express intent in enacting I.C. §§ 6–1012 and 6–1013.

Finally, the majority's distortion of the express language of I.C. §§ 6–1012 and 6–1013 is completely uncalled for under the circumstances of this case. The Idaho statutes in no way prohibited appellant's expert from testifying at trial. "[T]his section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial." I.C. § 6–1013. In order to qualify her witness as an expert at trial, appellant had only to ensure that he familiarized himself with the standards and practices of the Boise medical community. It was appellant's failure to adequately prepare her case for trial, not the Idaho statutes, that precluded her witness from testifying. Thus, I am unable to perceive any justification for the judicial tinkering in which the majority today engages.

SHEPARD, J., concurs.