757 P.2d 197

**Delray PEARSON and Betty Pearson, Plaintiffs–Appellants,**

v.

**Julene M. PARSONS, M.D., John Miller Thueson, M.D., d/b/a Blackfoot Medi- ·cal Clinic, Defendants–Respondents.**

No. 16904.

Supreme Court of Idaho.

June 9, 1988.

Whittier & Souza, Pocatello, for plaintiffs-appellants. Monte R. Whittier, argued.

Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-respondents. Raymond D. Powers, argued.

JOHNSON, Justice.

This is a medical malpractice case arising out of the death of a two and one-half year-old child in which the trial court granted summary judgment dismissing the complaint. The primary issue presented is whether in order to establish medical malpractice against a board-certified specialist plaintiff is required to present expert testimony from another physician who is board-certified in the same specialty. We conclude that plaintiff is not required to do so, if the expert testimony presented by plaintiff complies with the requirements contained in I.C. §§ 6–1012 and 6–1013. We reverse the summary judgment of the trial court.

## I.

### The Facts.

On December 21, 1984, Emily Pearson, who was two and one-half years old, complained to her parents that she had a stomach ache. The next morning Emily awoke still complaining of a stomach ache. She vomited at least twice that morning. For the next two days she continued to have a stomach ache and ran a fever. On December 24, Emily's father brought her to the Blackfoot Medical Clinic to see Dr. Parsons, a board-certified pediatrician.

Dr. Parsons examined Emily and discussed her symptoms with her father. The doctor felt that Emily most likely had just a cold or the flu, but also believed that appendicitis should be considered. Dr. Parsons told Emily's father that Emily's white cell blood count was high, which could indicate appendicitis. Because of this concern Dr. Parsons asked Dr. Thueson, a board-certified surgeon practicing in the clinic, to examine Emily.

After Dr. Thueson examined Emily, he and Dr. Parsons indicated to Emily's father that Emily probably had the flu and recommended treatment with Tylenol and clear liquids. According to Emily's father, Dr. Thueson then told him that if Emily's condition worsened to come and see him the next day in the emergency room of the hospital in Blackfoot. Emily's father says he asked Dr. Thueson what he meant when he referred to Emily's getting any worse and recalls that Dr. Thueson said, "Well, if she still maintains the high fever and she is still in pain, to check with me at the emergency room." Dr. Parsons does not recall being present when Dr. Thueson made these statements to Emily's father, but does remember that Dr. Thueson reported to her that he had told Emily's father that he would like to see Emily the following day in the emergency room in order to recheck Emily, if she still felt sick.

The next day Emily appeared to be very tired, was pale and had circles under her eyes. She indicated to her parents that she was in pain, but she did not seem to them to be any worse than she had been the previous day, and they decided not to take her to the emergency room to see Dr. Thueson.

On December 26 Emily still appeared to be ill. Emily's mother called the clinic and learned that Dr. Parsons was not on duty. Emily's parents did not consider taking Emily to the hospital that day. When she awoke on December 27, Emily's eyes had more color and were brighter, and she asked for food. That night, Emily began to vomit, her eyes took on a sunken look, and her breathing was unusual. The next morning she was much worse and her parents decided to make an appointment with Dr. Parsons for 3:00 o'clock that afternoon when Emily's father would be off work. Emily's mother took Emily with her to work so that she could watch Emily. As the afternoon progressed, Emily appeared very weak, causing her mother to become

very concerned. At approximately 2:30 that afternoon, Emily stopped breathing. An ambulance was called, but Emily could not be revived. Following her death, it was determined that Emily had died as a result of acute gangrenous appendicitis.

Emily's parents filed a complaint alleging that Dr. Parsons and Dr. Thueson had been negligent in failing properly to diagnose Emily's condition as acute appendicitis and in failing immediately to hospitalize her and monitor her condition. Following discovery the doctors moved for summary judgment.

Emily's parents submitted the affidavit of Dr. Weeks in opposition to the motion. Dr. Weeks' affidavit contained the following statements:

1. That I am a practicing doctor of medicine and practice in the City of Boise, State of Idaho and possess actual knowledge of the standards of practice for physicians and surgeons in the State of Idaho, particularly, with respect to the diagnosis and treatment of appendicitis.

2. That I have reviewed the medical care and treatment rendered by Dr. Julene Parsons and Dr. John Miller Thueson to Emily Pearson on or about December 24, 1984.

3. That I am also familiar with the standards of the community regarding the diagnosis and treatment of suspected and actual appendicitis.

4. That the actual diagnosis of appendicitis is one of the most elusive and difficult diagnoses to be made by a doctor and in most cases, final determination is not made until surgery.

5. That it is the standard of the community and the medical teaching standard generally, that you not rely heavily upon the observational powers and actual observations of parents in the diagnoses of appendicitis.

6. That in a situation where a child, as the doctor's record reflects, was examined at 10:00 o'clock in the morning with suspected appendicitis, there are actually two options available to a doctor:

   a. Hospitalization and observation;

   b. Re-examination and re-test of the white blood count and differential in a time span between four (4) to twelve (12) hours.

7. That it is the opinion of your Affiant, to a reasonable degree of medical certainty, that the recommendation that a child be brought back for re-examination should significant improvement not occur in the child's condition and/or should the child become worse, is not the standard which is to be followed by a practicing physician and that under the circumstances, a recommendation to bring the child back in twenty-four (24) hours was in error since the twenty-four (24) hour waiting period in an appendicitis case in a juvenile is an excessive amount of time.

8. That it is the opinion of your Affiant, to a reasonable degree of medical certainty, that the child should have been brought back in the afternoon of the 24th of December, 1984, for a re-examination and re-test of the blood count of the minor child.

Therefore, it is the opinion of your Affiant, to a reasonable degree of medical certainty, that Dr. Parsons and Dr. Thueson did not comply with the applicable standard of practice for physicians of their specialities in Blackfoot, Idaho, in the care and treatment they rendered to Emily Pearson on or about December 24, 1984.

In support of their motion for summary judgment, Dr. Parsons and Dr. Thueson argued that the affidavit of Dr. Weeks was insufficient under Idaho law to support the allegations of Emily's parents of medical malpractice, because Dr. Weeks was not board-certified in the specialties that Dr. Parsons and Dr. Thueson were. The trial court agreed and granted summary judgment dismissing the complaint. Emily's parents have appealed from this summary judgment.

## II.

The Testimony of a Board–Certified Specialist Is Not Necessary To Establish A Case of Medical Malpractice Against A Board–Certified Specialist.

In granting summary judgment, the trial court concluded that to establish their case

against each of the defendant physicians, Emily's parents were required to come forth with expert testimony from a physician board-certified in the same specialty as each of the defendant physicians. In doing so, the trial court relied on this Court's decision in *Buck v. St. Clair*, 108 Idaho 743, 702 P.2d 781 (1985). In ruling on the motion the trial court acknowledged that if the testimony of Dr. Weeks as to the standard of care in the community of Blackfoot were admissible, then an issue of material fact would exist, and the motion should fail. However, the trial court ruled that the affidavit of Dr. Weeks did not establish that he was board-certified in either pediatrics or surgery, that his testimony would be inadmissible at trial, that Emily's parents had failed to provide admissible expert testimony in support of their claim of medical malpractice, that no genuine issue of material fact existed, and that the motion for summary judgment was granted.

In granting summary judgment the trial court misconstrued the holding in *Buck*, *supra*. There this Court held that "a board-certified physician can testify only against another board-certified physician practicing in the same area of medicine." 108 Idaho at 745, 702 P.2d at 783. There was no issue in *Buck* concerning whether a physician without board certification could testify against one who is board-certified. The decision in *Buck* was not intended to reach the issue presented here.

■ In deciding whether the testimony of a physician without board certification is sufficient to establish a malpractice case against a board-certified physician, we must examine I.C. §§ 6–1012 and 6–1013. I.C. § 6–1012 requires that in a medical malpractice case, plaintiff must prove that the defendant physician negligently failed to meet the applicable standard of health care practice of the community in which the health care was, or should have been, provided. The statute also provides that the defendant physician "shall be judged ... in comparison with similarly trained and qualified [physicians] ... in the same community, taking into account his or her training, experience, and fields of medical

specialization, if any." "Community" is defined to mean "that geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided." I.C. § 6–1012.

I.C. § 6–1013 provides that the applicable standard of practice and the failure of the defendant physician to meet this standard must be established by plaintiff by "one (1) or more knowledgeable, competent expert witnesses." The statute also provides that this expert testimony may only be admitted in evidence if a foundation is first laid establishing (a) that the opinion is actually held by the expert witness, (b) that the opinion can be testified to with reasonable medical certainty, and (c) that the expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable community standard to which the testimony of the witness is addressed.

There is no requirement in these statutes that an expert witness whose testimony is offered to establish a case of medical malpractice against a board-certified physician must also be board-certified in the same specialty. We specifically hold that to fulfill the requirement of presenting expert testimony in a medical malpractice case against a board-certified specialist, plaintiff may offer the testimony of a physician who is not board-certified in the same speciality as the defendant physician, so long as the testimony complies with the requirements of I.C. §§ 6–1012 and 6–1013.

### III.

For the Purpose of Opposing A Motion For Summary Judgment, The Affidavit of Dr. Weeks Raised Genuine Issues of Material Fact.

We first note that the affidavits of Dr. Lindsay and Dr. Montgomery offered in support of the motion for summary judgment are both devoid of statements indicating actual knowledge of the standard of practice in the Blackfoot community. Both affidavits refer only to the knowledge of the standards of practice in the state of Idaho. While I.C. §§ 6–1012 and 6–1013

address only the plaintiff's burden of proof, if a defendant seeks summary judgment in a medical malpractice case, the supporting affidavits or other evidence must show that there is no genuine issue of material fact and that defendant is entitled to judgment as a matter of law. I.R.C.P. 56(c). Merely filing a motion for summary judgment is not sufficient to place the burden on the adverse party to establish that there is a genuine issue of material fact. The motion must be supported as provided in I.R.C.P. 56 in order to invoke the requirement that "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e).

■ Here, since the affidavits of Dr. Lindsay and Dr. Montgomery did not indicate actual knowledge of the standard of practice in the Blackfoot community, the burden never shifted to Emily's parents to show that there was a genuine issue for trial. However, even if Emily's parents had been required to set forth specific facts showing that there was a genuine issue for trial, the affidavit of Dr. Weeks was sufficient for that purpose. Since the trial court did not address the insufficiency of the defense affidavits, and since this issue has not been raised on appeal, we will proceed to address the issue framed by this appeal.

This Court has held that "in order to preclude summary judgment in medical malpractice cases, plaintiffs must show that expert testimony has been *offered* by either the plaintiff or defendant which when viewed in a light most favorable to plaintiffs indicates that the defendant has negligently failed to meet the applicable standard of health care practice of the community." *Maxwell v. Women's Clinic, P.A.*, 102 Idaho 53, 56, 625 P.2d 407, 410 (1981).

In other types of cases where we have reviewed the standards applicable to summary judgment motions we have held:

Those standards require the district court, and this Court upon review, to liberally construe the facts in the existing record in favor of the nonmoving party, and to draw all reasonable inferences from the record in favor of the nonmoving party. *Anderson v. Ethington*, 103 Idaho 658, 660, 651 P.2d 923, 925 (1982).... "[A]ll doubts are to be resolved against the moving party." *Ashby v. Hubbard*, 100 Idaho 67, 69, 593 P.2d 402, 404 (1979). The motion must be denied "if the evidence is such that conflicting inferences can be drawn therefrom and if reasonable [people] might reach different conclusions." *Id.*

*Doe v. Durtschi*, 110 Idaho 466, 469–70, 716 P.2d 1238, 1241–42 (1986).

These standards are applicable to motions for summary judgment in medical malpractice cases as well.

■ When viewed in light of the standards set forth in *Maxwell* and *Durtschi*, the affidavit of Dr. Weeks was sufficient to raise a genuine issue of material fact and to defeat the motion for summary judgment of Dr. Parsons and Dr. Thueson. A review reveals that when measured by these standards the affidavit fulfilled the requirements of I.C. §§ 6–1012 and 6–1013 and should have been considered by the trial court, even though Dr. Weeks was not board-certified in either pediatrics or surgery.

1. Dr. Weeks demonstrated that he was judging Dr. Parsons and Dr. Thueson "in comparison with similarly trained and qualified [physicians] in the same community, taking into account his or her training, experience, and fields of medical specialization." I.C. § 6–1012. ("Dr. Parsons and Dr. Thueson did not comply with the applicable standard of practice for physicians of their specialties in Blackfoot, Idaho." Weeks' affidavit, final paragraph, *supra*.)

2. He was a "knowledgeable, competent expert witness." I.C. § 6–1013. ("I am a practicing doctor of medicine." Weeks' affidavit, paragraph 1, *supra*.)

3. He actually held an opinion about the "applicable standard of practice" and

the failure of Dr. Parsons and Dr. Thueson to meet the standard. I.C. § 6–1013(a).

("[I]t is the opinion of your Affiant ... that the recommendation that a child be brought back for re-examination should significant improvement not occur in the child's condition and/or should the child become worse, is not the standard which is to be followed by a practicing physician and that under the circumstances, a recommendation to bring the child back in twenty-four (24) hours was in error since the twenty-four (24) hour waiting period in an appendicitis case in a juvenile is an excessive amount of time ... that the child should have been brought back in the afternoon of the 24th of December, 1984, for a re-examination and re-test of the blood count of the minor child ... [and] that Dr. Parsons and Dr. Thueson did not comply with the applicable standard[s] ... in the care and treatment they rendered to Emily Pearson on or about December 24, 1984." Weeks' affidavit, paragraphs 7 and 8 and final paragraph, *supra*.)

4. His opinion was rendered "with reasonable medical certainty." I.C. § 6–1013(b).

("[I]t is the opinion of your Affiant, to a reasonable degree of medical certainty...." Weeks' affidavit, paragraphs 7 and 8 and final paragraph, *supra*.)

5. He possessed "professional knowledge and expertise coupled with actual knowledge of the applicable ... community standard to which his ... expert opinion testimony is addressed." I.C. § 6–1013(c).

("I am also familiar with the standards of the community regarding the diagnosis and treatment of suspected and actual appendicitis." Weeks' affidavit, paragraph 3, *supra*.)

Dr. Parsons and Dr. Thueson also contend that the affidavit of Dr. Weeks failed to present any proof of proximate cause and that summary judgment was properly granted for that reason also, although not mentioned by the trial court in its decision.

In a medical malpractice case "a plaintiff has the burden of proving not only that a defendant failed to use ordinary care, but also that the defendant's failure to use ordinary care was the proximate cause of damage to the plaintiff." *Hall v. Bacon*, 93 Idaho 1, 3, 453 P.2d 816, 818 (1969). Here there is no dispute that Emily died from acute gangrenous appendicitis. Drawing all reasonable inferences from the affidavit of Dr. Weeks and resolving all doubts against the moving parties, we conclude that there was a genuine issue of material fact as to whether the alleged negligence of Dr. Parsons and Dr. Thueson was the proximate causation of Emily's death, and that the motion should have been denied on that ground also.

## IV.

### Conclusion.

The summary judgment of the trial court is reversed. The case is remanded for further proceedings consistent with this opinion.

Costs to appellants.

No attorney fees were requested.

SHEPARD, C.J., and BISTLINE and HUNTLEY, JJ., concur.

BAKES, Justice, concurring in the result:

I concur in the result reached by the majority based on that part of the majority opinion which concludes that the affidavits of Dr. Lindsay and Dr. Montgomery, filed on behalf of the defendants, were not adequate to support granting summary judgment for the defendants. However, I cannot concur in the majority's statement that "the affidavit of Dr. Weeks was sufficient to raise a genuine issue of material fact and to defeat the motion for summary judgment of Dr. Parsons and Dr. Thueson." *Ante* at 338, 757 P.2d at 201.

Regarding the sufficiency of the affidavit of Dr. Weeks, I.R.C.P. 56(e) states, in pertinent part, that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and *shall*

*show affirmatively that the affiant is competent to testify to the matters stated therein."* (Emphasis added.) Further, focusing to an even greater extent on the facts of this case, I.C. § 6–1013 states that expert opinion testimony regarding a defendant's failure to meet the applicable standard of practice "may *only* be admitted in evidence *if the foundation therefor is first laid,* establishing ... (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard...." (Emphasis added.)

Both I.R.C.P. 56(e) and I.C. § 6–1013 require an adequate foundation regarding the expert's qualifications to be laid before he is permitted to testify as an expert by way of affidavit or otherwise. An affirmative showing is necessary.[1] An adequate foundation is *not* laid, however, by the mere inclusion of conclusory statements. Neither is an adequate foundation laid where an affidavit does not set out the requisite facts necessary to rule on an expert affiant's qualifications. In *Casey v. Highlands Ins. Co.,* 100 Idaho 505, 508, 600 P.2d 1387, 1390 (1979), this Court, in discussing a factually deficient and conclusory affidavit stated:

> "Where an affidavit merely states conclusions and does not set out facts, such supporting affidavit is inadmissible to show the absence of a genuine issue of material fact. *Matthews v. New York Life Insurance Co.,* 92 Idaho 372, 443

P.2d 456 (1968). *Accord, Openshaw v. Allstate Insurance Co.,* 94 Idaho 192, 484 P.2d 1032 (1971)."

A supporting affidavit is inadmissible to show the *presence* of a genuine issue of material fact if it merely states conclusions and does not set out the underlying facts. *See also Corbridge v. Clark Equip. Co.,* 112 Idaho 85, 87, 730 P.2d 1005, 1007 (1986) (affidavit not establishing specific facts "is precisely the type of flawed affidavit contemplated by I.R.C.P. 56(e)"); Wright, Miller & Kane, Federal Practice & Procedure: Civil (Second) § 2738 (1983) (ultimate or conclusory facts cannot be utilized on a summary judgment motion).

On point is *Nadler v. Baybank Merrimack Valley, N.A.,* 733 F.2d 182 (1st Cir. 1984), *reh'g and reh'g en banc denied* 1984. In *Nadler,* defendant moved for summary judgment and supported its motion with, *inter alia,* an expert's deposition. Plaintiffs responded by offering the affidavit of Nadler, and her deposition. Summary judgment was granted, and the United States Court of Appeals, First Circuit, affirmed, stating that plaintiffs failed to adduce admissible evidence. It commented on Nadler's affidavit as follows:

> "Asked her own qualifications to express these opinions, Nadler's sole answer was that she was 'a furniture person,' amplified in her affidavit to say she had 'extensive experience.'
>
> "Nadler did not lack for self-confidence. ... [However,] self-confidence is not

---

**1.** *Accord Bieghler v. Kleppe,* 633 F.2d 531, 533–534 (9th Cir.1980):
"Affidavits submitted in support of or in opposition to a summary judgment motion must ... 'show affirmatively that the affiant is competent to testify to the matters stated therein.' Fed.R.Civ.P. 56(e)
....
"The expert's affidavit here *affirmatively showed his qualifications as an expert....* The affidavit was admissible to support plaintiff's opposition to the motion for summary judgment." (Emphasis added.)
*Walling v. Fairmont Creamery Co.,* 139 F.2d 318, 322 (8th Cir.1943) ("When affidavits are offered in support of a motion for summary judgment, they must present admissible evidence, and must not only be made on the personal knowledge of the affiant, but must show that the affiant possesses the knowledge asserted.");

*Carlson v. Tucson Racquet & Swim Club, Inc.,* 127 Ariz. 247, 619 P.2d 756, 758 (Ct.App.1980), *reh'g denied* and *review denied* 1980 ("Plaintiff's reliance on the affidavit of [the expert] as creating fact issues is misplaced. [The expert's] opinions ... do not meet the requirements of 17A A.R.S. Rules of Evidence, rule 702, in that they are *unsupported by the necessary expert qualifications...."* (Emphasis added)); Rothstein, *Rules of Evidence for the United States Courts and Magistrates,* p. 271 (2d ed. 1987) ("Civil Rule 56 on summary judgment must be construed in the light of the Federal Rules of Evidence; expert affidavits will not prevent summary judgment unless they show compliance with the requirements of Art. VII of the Federal Rules of Evidence [which includes Rule 702, requiring the expert's qualifications to be established]....").

enough. The liquidation business requires specialized knowledge as evidenced by ... the need for experts. She advanced, however, no single instance of any personal connection with liquidation sales, either directly or indirectly....

"... [T]here must be some burden on her, and we cannot think unidentified, even 'extensive' experience in the furniture business enough to qualify her as an expert on the conduct of liquidation sales...." 733 F.2d at 184–185.

The court in *Nadler* concluded that, "Plaintiffs having failed to adduce admissible evidence," the judgment of the district court was affirmed. *Id.*

The affidavit of Dr. Weeks in the instant case closely parallels that proffered by Nadler; accordingly, we too should recognize the deficiencies in Dr. Weeks' affidavit and hold it inadmissible to withstand the instant motion for summary judgment. Nadler's sole recitation of qualifications identified her as "a furniture person" with "extensive experience." Likewise, Dr. Weeks states his qualifications as "a practicing doctor" possessing "actual knowledge." Further, Nadler advanced no single instance of any personal connection with the subject on which she rendered her alleged expert opinion. Neither did Dr. Weeks advance a single instance of any personal connection with the diagnosis and treatment of appendicitis under the Blackfoot standard of care. Instead, the affidavit of Dr. Weeks merely states conclusions as to his qualifications; it does not set out the underlying facts regarding his qualifications. The only clues given regarding his qualifications are the following:

"1. That I am a practicing doctor of medicine and practice in the City of Boise, State of Idaho and possess actual knowledge of the standards of practice for physicians and surgeons in the State of Idaho, particularly, with respect to the diagnosis and treatment of appendicitis.

....

"3. That I am also familiar with the standards of the community regarding the diagnosis and treatment of suspected and actual appendicitis." Affidavit of Dr. David Weeks, pp. 1, 2.

These statements do not set out the background facts regarding Dr. Weeks' qualifications. Rather, they merely allege that he is "familiar with the standards of the community regarding the diagnosis and treatment of suspected and actual appendicitis," without stating whether the community is Boise or Blackfoot. Nowhere does Dr. Weeks support these conclusory statements with underlying facts regarding: (1) where and when he received his M.D. degree and when he was licensed to practice in the State of Idaho; (2) any other specialized training he may have had; (3) how he gained actual knowledge of the standards of practice for board certified pediatricians and surgeons in the State of Idaho (especially since he has not established his qualifications as either a board certified pediatrician or a surgeon); (4) how he attained familiarity with Blackfoot community standards, if indeed he had, particularly regarding the diagnosis and treatment of appendicitis by board certified pediatricians and surgeons; (5) such additional items as whether he has taught or published in the field, whether he has previously testified as an expert on this subject, the number of patients with this problem he has treated, and how much time he devotes to practicing in this field.

Some combination of underlying facts, such as those just delineated, would be necessary in order to qualify an expert under I.R.E. 702 at a full trial. An expert is not allowed to render an opinion as an expert until he demonstrates a sufficient foundation establishing his qualifications. Rule 56(e) requires the same standard in a summary judgment proceeding as is mandated at trial. *Jameson v. Jameson*, 176 F.2d 58 (D.C.Cir.1949). As Professors Wright, Miller and Kane have stated, "Affidavits filed by a party in support of or in opposition to a motion for summary judgment must present evidence. The affidavits should follow substantially the same form as though the affiant were giving testimony in court." Wright, Miller and Kane, Federal Practice & Procedure: Civil

(Second) § 2738 (1983), *quoting Jameson v. Jameson*, 176 F.2d 58, 60 (D.C.Cir.1949).

An expert's affidavit should lay an adequate foundation for his qualifications to render an expert opinion. This is accomplished by reciting facts (*e.g.*, those delineated above in numbers (1) through (5)) which support his "expert" designation. As at trial though, if an inadequate foundation is contained in the affidavit, the affiant is not allowed to render an expert opinion. Since Dr. Weeks' affidavit did not lay the proper preliminary foundation regarding his expert qualifications, his affidavit was deficient and his opinion expressed therein was not admissible, and the trial court did not err in rejecting it.

The Court's statement that "in a medical malpractice case against a board-certified specialist, plaintiff may offer the testimony of a physician who is not board-certified in the same specialty as the defendant physician, so long as the testimony complies with the requirements of I.C. §§ 6–1012 and 6–1013," *ante* at 338, 757 P.2d at 201, appears to have effectively overruled most of what was left of our decision in *Buck v. St. Clair*, 108 Idaho 743, 702 P.2d 781 (1985), after our recent decision in *Grimes v. Green*, 113 Idaho 519, 746 P.2d 978 (1987).

However, the result reached by the majority today is probably correct because the affidavits of Dr. Lindsay and Dr. Montgomery were also deficient for much the same reasons as was the affidavit of Dr. Weeks. Accordingly, since all the affidavits were deficient, I would merely reverse and remand for further proceedings.[2]

---

**2.** *Accord Martin v. Allied International, Inc.,* 16 F.R.D. 385 (S.D.N.Y.1954) (where, on motion for summary judgment, affidavits submitted by both parties were vague, general and conclusory in nature, the motion for summary judgment was held in abeyance and both parties were granted permission to submit further affidavits).