757 P.2d 1199

**Shirley M. FRANK and Henry Frank, husband and wife, Plaintiffs–Appellants,**

v.

**EAST SHOSHONE HOSPITAL, Defendant,**

**and**

**Glenn C. Faith, M.D., jointly and individually, Defendant–Respondent.**

**No. 16648.**

Supreme Court of Idaho.

July 11, 1988.

Dennis W. Reynolds (argued), Spokane, Wash., and Charles M. Dodson, Coeur d'Alene, for plaintiffs-appellants.

Aherin & Rice PA, Lewiston, for defendant-respondent. Stephan C. Rice argued.

BISTLINE, Justice.

This is an appeal by plaintiffs-appellants Frank from a summary judgment in favor of defendant-respondent Faith in an action alleging medical malpractice. The district court granted summary judgment on the ground that plaintiffs' expert was not familiar with the local or community standard as mandated by I.C. § 6–1013(c). We affirm.

Plaintiffs alleged medical malpractice arising from the treatment Mrs. Frank received from Dr. Faith at the East Shoshone Hospital for a broken ankle. Dr. Faith moved for summary judgment, contending that plaintiffs' expert, Dr. Blaisdell, was not familiar with the standard of care in the region known as the Silver Valley in northern Idaho. The motion was granted.[1]

Idaho Code § 6–1013(c) states that in any medical malpractice case, plaintiff "must" establish "that such expert witness possesses professional knowledge and expertise coupled with *actual knowledge* of the applicable said community standard to which his or her expert testimony is addressed" (emphasis added).[2] The deposition testimony of plaintiffs' expert, Dr. Blaisdell, however, fails to establish that Dr. Blaisdell was familiar with the local standard of care at the East Shoshone Hospital. The record provides:

Q. [By defendant's counsel] You haven't discussed the standard of care in particular with any doctors that practice in that area?

A. [By Dr. Blaisdell] No sir.

Q. Okay. You're not familiar with the emergency room procedures at the East Shoshone Hospital that were in effect in February of 1982 are you?

A. Not in any detail, no sir.

Deposition of Dr. Blaisdell, p. 61. Consequently, we agree with the trial court that as a matter of law plaintiffs' expert was not familiar with the applicable standard of care.

1. Our scope of appellate review is limited to determining only whether there exist genuine issues of material fact and whether the prevailing party is entitled to judgment as a matter of law. *Gro–Mor, Inc. v. Butts,* 109 Idaho 1020, 712 P.3d 721 (Ct.App.1985).

2. Idaho Code § 6–1013 provides in full:
**Testimony of expert witness on community standard.**—The applicable standard of practice and such a defendant's failure to meet said standard must be established in such cases by such a plaintiff by testimony of one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; provided, this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial.

Our decision today does not cast an onerous burden on plaintiffs in medical malpractice actions. It is not an overly burdensome requirement to have an expert become familiar with the standard of care in the community where alleged malpractice is committed. In *Buck v. St. Clair*, 108 Idaho 743, 746, 702 P.2d 781, 784 (1985), the expert became familiar with the local standard of care by simply questioning a local doctor.[3] Furthermore, I.C. § 6–1013(c) provides that nothing shall prohibit a competent expert witness who resides elsewhere from adequately familiarizing him or herself with the applicable local standard of care.[4]

Thus, because the requirement of I.C. § 6–1013(c) is not a crushing burden, we decline to judicially abrogate the legislature's decision to require that each and every malpractice expert be or become familiar with the local standard of care.

*Affirmed.* Costs to defendants.

HUNTLEY, J., and TOWLES, J., pro tem., concur.

SHEPARD, Chief Justice, concurring in result only.

I concur in the conclusion reached by the majority, *i.e.*, that the summary judgment granted by the trial court should be affirmed. However, I emphatically disagree and dissent with the basis used by the majority to reach that result.

The majority quotes a few sentences from the deposition of Dr. Blaisdell (plaintiffs' expert medical witness), and concludes therefrom that the witness did not have knowledge of the standard of care in the Silver Valley, Kellogg, or the East Shoshone Hospital.

I agree that the issue presents a close question. However, given our standard for the issuance of summary judgment, *i.e.*, that all the facts and legitimate inferences arising therefrom are to be construed most favorably toward the non-moving party, *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1986); *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982); *Huyck v. Hecla Mining Co.*, 101 Idaho 299, 612 P.2d 142 (1980); I.R.C.P. 56(c), I am of the view that Dr. Blaisdell was marginally qualified to express his opinion as to a violation of the local standard of care. Dr. Blaisdell was asked: "Have you done any research or done anything to familiarize yourself with the standard of care in the Silver Valley, either Kellogg or the East Shoshone Hospital." He answered, "only indirectly," and then went on to explain that he had observed treatment of patients from that locality and was familiar with the treatment received in that particular area. His testimony then becomes somewhat confusing when he asserts that the standard of care in the Silver Valley region is, or should be, similar to a national standard.

It should be noted that the trial court, in his ruling on the motion for summary judgment, alluded to the fact that Blaisdell was a board-certified orthopedic surgeon and should not be heard to opine as to the standard of care rendered by a general or family practitioner. In his deposition, Dr. Blaisdell asserted that he had worked with and was familiar with the standard of care for a general or family practitioners.

Hence, I would hold that at the point of summary judgment, the knowledge of Dr. Blaisdell was sufficient to satisfy the local standard of care requirement contained in I.C. § 6–1013(c). Particularly, I would so hold in view of this Court's most recent pronouncement in the area of summary judgment, *i.e.*, that summary judgment is not appropriate unless the basis therefor is demonstrated beyond a reasonable doubt. *Nelson v. Steer*, Idaho S.Ct. # 16807, Slip op. # 36 (May 23, 1988).

---

**3.** Although the *Buck* decision was subsequently limited and clarified in *Grimes v. Green*, 113 Idaho 519, 746 P.2d 978 (1987), the above noted point of law was not.

**4.** *See* note 2, *supra*.

The truncated opinion of the majority presents no factual background whatsoever. It is that factual background which I submit forms the correct basis for affirming the issuance of summary judgment. That factual background distinguishes this case from *Grimes v. Green*, 113 Idaho 519, 746 P.2d 978 (1987) and *Buck v. St. Clair*, 108 Idaho 743, 702 P.2d 781 (1985), and every other medical malpractice case considered by this Court.

This case presents only the question of whether a physician is required to treat a person who has an injury. The plaintiff, Shirley Frank, suffered a compound fracture of her left ankle and was delivered to the emergency room of East Shoshone Hospital shortly before midnight on February 20, 1982. There she was examined by Dr. Faith, a general practitioner/physician. He diagnosed her injury and rendered emergency care in cleansing the injury, ordering x-rays, applying a dressing, and stabilizing the ankle. Faith determined that the injury required treatment beyond his level of competence, and suggested treatment by one of two other physicians. Frank refused that tendered offer of treatment by other physicians, and stated that she desired treatment by a physician in Spokane, Washington.

At that point in time Dr. Faith was presented with the following circumstances. Frank had a blood alcohol content of .244. Upon delivering Mrs. Frank to the emergency room, her husband had left and did not reappear for ten hours. The regular physician of Mrs. Frank was unavailable, and she refused treatment from any other local physician, demanding rather that she be treated at Spokane, Washington. The injuries to Mrs. Frank were not life threatening, and Faith did not believe that Mrs. Frank was capable of giving informed consent to any further procedures at East Shoshone Hospital.

Dr. Blaisdell, the plaintiffs' expert, agreed that a general practitioner/physician, when faced with such injury, might be reluctant to treat it because of his lack of knowledge or ability. Blaisdell also suggested that even if Mrs. Frank had given her consent, under such circumstances it probably would not have been valid. Dr. Blaisdell opined that Mrs. Frank could have been transported by private vehicle to Spokane, and in fact approximately two days later she was transported to Spokane by her husband in a private vehicle.

There is nothing in the record to indicate that any of the treatment rendered by Dr. Faith constituted a violation of the standard of care. The only issue presented is rather what Dr. Faith did *not* do. The only testimony by Dr. Blaisdell as to the care rendered by Dr. Faith is that the compound fracture of the ankle should have been reduced, albeit, Dr. Blaisdell did not disagree that general practitioners might be reluctant to undertake such a procedure.

Hence, the allegations against Dr. Faith do not relate to his treatment of Mrs. Frank. Rather, they relate to Faith's alleged failure to render additional treatment and care. No rule of law is cited which requires a physician to render care, and places liability upon him if he fails to do so. In fact, our statute I.C. § 39–1391c provides in pertinent part:

> Nothing in this act shall be deemed to require any physician to undertake to or to furnish medical care and treatment, whether on an emergency basis or otherwise, to any person requesting or presented for such care and treatment, nor shall any such physician be held liable in any civil action by reason of his refraining from the furnishing of such care and treatment or referring the same to a specialist or other physician believed by him to be more uniquely or appropriately experienced and qualified.

Hence, I would hold that no cause of action lies in the instant circumstances for the refusal of Dr. Faith to render additional care. It is that failure to render care which forms the basis for Dr. Blaisdell's opinion that Dr. Faith deviated from the standard of care, *i.e.*, that Dr. Faith failed to reduce the fracture. While the record

discloses a conflict between the testimony of Mrs. Frank and Dr. Faith as to whether Dr. Faith advised her of his inability to render additional care, I do not conclude that such is a material conflict of fact since it is undisputed that Mrs. Frank refused further treatment at East Shoshone Hospital and demanded that she be treated at Spokane. There is no assertion in the record that the Franks demanded transportation to Spokane, or that such demand was refused. In any event, that issue would relate to the liability of the hospital, which has been dismissed as a defendant, and is not a party on this appeal.

In brief, I would affirm the summary judgment issued by the trial court, but not on the grounds stated by the majority opinion.

BAKES, Justice, concurring specially:

I concur with the Court's opinion that the affidavit of plaintiff's expert, Dr. Blaisdell, was not adequate to meet the requirements of I.C. § 6–1013(c) and therefore under I.R.C.P. 56(e) the affidavit was not sufficient to preclude the entry of summary judgment in favor of the defendant. I.R.C.P. 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be *admissible in evidence,* and *shall show affirmatively that the affiant is competent to testify to the matters stated therein.*" (Emphasis added.) The affidavit of Dr. Blaisdell did not meet the requirements of I.R.C.P. 56(e) and I.C. § 6–1013(c), and accordingly I concur with the Court's opinion. *See Pearson v. Parsons,* 114 Idaho 334, 757 P.2d 197 (1988), Bakes, J., concurring in the result.

However, I also agree with that portion of Chief Justice Shepard's concurring opinion in which he concludes that under I.C. § 39–1391(c) "no cause of action lies in the instant circumstances for the refusal of Dr. Faith to render additional care." *Ante* at 483, 757 P.2d at 1202.

HUNTLEY, Justice, concurring.

I concur with the majority's adoption of a "bright line" rule which requires that the

plaintiffs' expert, pursuant to I.C. § 6–1013(c), become familiar with the local community standard of care.

Plaintiffs contend that treatment here provided violated a standard of care in *every* community in Idaho. It is true that in some cases, malpractice may seem self-evident. An intoxicated doctor operating on a patient is one example. In such a case, resources are undoubtedly wasted by requiring an expert to become familiar with the local standard of care: the malpractice alleged speaks for itself. However, I submit the *vast* majority of cases are not so clear cut. If plaintiffs' position were adopted, an endless stream of cases would reach this Court, demanding that we define what is, and what is not, "clear cut" malpractice. Making such a distinction is often arbitrary. This is especially true because we are trained in the field of law, not medicine.

Just as important, as the majority opinion notes, it does not take a Herculean effort for an expert to become familiar with the local standard of care. It can be done on the telephone. Moreover, if the plaintiff's expert cannot find a doctor from the local community to inform him or her of the local standard of care, I.C. § 6–1012 provides that where the standard of practice is "indeterminable, evidence of such standard in similar Idaho communities at said time may be considered." Thus, the decision today speaks clearly as to the requirements concerning the expert's knowledge of the local standard of care. As a result, the statute will no longer serve as a trap for the unwary.