# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41869

| | | |
|---|---|---|
| DAVID SAMPLES and JAYME SAMPLES, husband and wife, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | Twin Falls, November 2015 Term |
| v. | ) ) | 2016 Opinion No. 113 |
| DR. RAY W. HANSON, individually, and BMH, INC., dba BINGHAM MEMORIAL HOSPITAL, | ) ) ) ) | Filed: November 1, 2016

Stephen Kenyon, Clerk |
| Defendants-Respondents, | ) ) | |
| and | ) ) | |
| JOHN DOES I-X, individuals and entities presently unknown, | ) ) ) | |
| Defendants. | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bingham County. Hon. David C. Nye, District Judge.

The judgment of the district court is vacated and the case is remanded.

Featherston Law Firm, Chtd., Sandpoint, for appellants. Brent Featherston argued.

Powers Tolman Farley, PLLC, Twin Falls, for respondents. Jennifer K. Brizee argued.

_____

J. JONES, Chief Justice

David and Jayme Samples ("the Samples") appeal a grant of summary judgment in favor of Dr. Ray Hanson and Bingham Memorial Hospital in a medical malpractice action. The district court granted summary judgment after it determined that the Samples failed to establish the necessary foundation under Idaho Code sections 6-1012 and 6-1013 to admit testimony from the Samples' only medical expert. We vacate and remand.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 30, 2009, Mr. Samples was admitted to Bingham Memorial Hospital ("BMH") in Blackfoot with abdominal pain and was found to have acute cholecystitis. On October 2, Dr. Hanson performed a laparoscopic cholecystectomy on Mr. Samples. Dr. Hanson was a member of the American College of Surgeons at the time and board certified as a general surgeon from 1977 until 2008, the year prior to the surgery. During the surgery, Mr. Samples' colon was torn and repaired by Dr. Hanson. Mr. Samples later became hypoxic and experienced respiratory distress. On October 4, Mr. Samples was transferred from BMH to Portneuf Medical Center ("PMC") in Pocatello, Idaho, for a pulmonary consultation.

Dr. Birkenhagen was a practicing surgeon at PMC in 2009 when Dr. Hanson performed the laparoscopic cholecystectomy on Mr. Samples. Dr. Birkenhagen was a member of the American College of Surgeons and board certified at the time. At PMC, Dr. Birkenhagen re-opened the surgical site and discovered sepsis. Dr. Birkenhagen removed significant amounts of pus and later operated in order to repair a hole in the colon, which had allowed stool to leak out of the incision at the surgical site. The sepsis had caused Mr. Samples' respiratory distress.

On September 27, 2011, Samples filed suit against BMH and Dr. Hanson for medical malpractice. The district court issued a scheduling order on January 30, 2013, setting the case for trial in January of 2014 and establishing a deadline of September 16, 2013 for the disclosure of the Samples' experts. The Samples retained Dr. Birkenhagen to testify that Dr. Hanson had breached the local standard of care and caused Mr. Samples' injuries. The names of the Samples' experts, including Dr. Birkenhagen, were not formally disclosed until September 20 and additional information required by the scheduling order was not provided until September 30.

Dr. Hanson filed a motion to strike the late-disclosed experts on September 20. On October 18, Dr. Hanson filed a motion for summary judgment, contending that the Samples had no expert witness testimony to support their claims of negligence and causation. On October 24, the district court sanctioned the Samples pursuant to Idaho Rules of Civil Procedure 16(i) and 37(b)(2)(B) for failure to comply with the scheduling order. The district court limited the Samples to testimony from one expert, Dr. Birkenhagen, and only to opinions that had been disclosed by September 30, 2013, as a sanction for the Samples' failure to comply with the scheduling order and deadlines for Idaho Rule of Civil Procedure 26(b)(4) disclosures.

Dr. Hanson deposed Dr. Birkenhagen on October 29 and shortly thereafter filed a motion to strike, arguing that the requirements of Idaho Code section 6-1013 did not permit Dr. Birkenhagen to testify as to the applicable community standard of health care practice. The district court conducted a hearing on Dr. Hanson's motions to strike and for summary judgment on November 21. The district court noted that because the Samples had only one medical expert and the statute of limitations had already run, granting Dr. Hanson's motion to strike Dr. Birkenhagen would effectively dismiss the Samples' case with prejudice. The district court and the parties agreed to treat the motion to strike as a motion for summary judgment and to continue the matter for two weeks, allowing the Samples adequate time to respond.

On January 3, 2014, the district court granted summary judgment in favor of Dr. Hanson after concluding that the Samples could not establish the necessary foundation required by Idaho Code sections 6-1012 and 6-1013 to admit Dr. Birkenhagen's testimony. Because the district court dismissed the case on the standard of care issue, it did not reach Dr. Hanson's earlier motion for summary judgment on the issue of causation and denied that motion without deciding the issue on the merits. The Samples timely appealed.

## II. STANDARD OF REVIEW

"On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion." *Arregui v. Gallegos-Main*, 153 Idaho 801, 804, 291 P.3d 1000, 1003 (2012). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* "When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party." *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163, 45 P.3d 816, 819 (2002).

"The admissibility of expert testimony offered in connection with a motion for summary judgment 'is a threshold matter that is distinct from whether the testimony raises genuine issues of material fact sufficient to preclude summary judgment.'" *Bybee v. Gorman*, 157 Idaho 169, 173, 335 P.3d 14, 18 (2014) (quoting *Arregui*, 153 Idaho at 804, 291 P.3d at 1003). "When deciding whether expert testimony is admissible, the liberal construction and reasonable inferences standard does not apply." *Id.* (internal quotations omitted). "The trial court must look

3

at the affidavit 'testimony and determine whether it alleges facts which, if taken as true, would render the testimony of that witness admissible.'" *Id.* (quoting *Hall v. Rocky Mountain Emergency Physicians, LLC*, 155 Idaho 322, 325–26, 312 P.3d 313, 316–17 (2013)).

"This Court reviews challenges to the trial court's evidentiary rulings under the abuse of discretion standard." *Hall*, 155 Idaho at 326, 312 P.3d at 317. This Court engages in a three-part inquiry when reviewing for an abuse of discretion: "(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason." *McDaniel v. Inland Nw. Renal Care Grp.-Idaho, LLC*, 144 Idaho 219, 221–22, 159 P.3d 856, 858–59 (2007).

## III. ANALYSIS

The Samples raise three issues on appeal. The first is whether the district court erred in finding that Dr. Birkenhagen was an out-of-area expert. The second is whether the district court erred in concluding that Dr. Birkenhagen failed to familiarize himself with the applicable community standard of health care practice. The third is whether the district court erred in denying the Samples' motion for relief from the pretrial order. We need address only the second issue, as the first issue has been rendered moot by our decision on the second issue and the third issue can be sorted out on remand.

**A.    The district court erred in concluding that Dr. Birkenhagen failed to familiarize himself with the applicable standard of care.**

"To avoid summary judgment for the defense in a medical malpractice case, the plaintiff must offer expert testimony indicating that the defendant health care provider negligently failed to meet the applicable standard of health care practice." *Dulaney*, 137 Idaho at 164, 45 P.3d at 820. In medical malpractice cases, Idaho Code section 6-1012 requires a plaintiff to "prove by direct expert testimony that the defendant negligently failed to meet the applicable community standard of health care practice." *Mattox v. Life Care Ctrs. of Am., Inc.*, 157 Idaho 468, 473, 337 P.3d 627, 632 (2014). Idaho Code section 6-1012 defines the applicable community standard of care as:

> (a) the standard of care for the class of health care provider to which the defendant belonged and was functioning, taking into account the defendant's training, experience, and fields of medical specialization, if any; (b) as such standard existed at the time of the defendant's alleged negligence; and (c) as such standard existed at the place of the defendant's alleged negligence.

4

*Dulaney*, 137 Idaho at 164, 45 P.3d at 820 (internal citations omitted).

Idaho Code section 6-1013 "governs the manner in which such proof must be provided. When offering the opinion testimony of a 'knowledgeable, competent expert' witness, the plaintiff must lay proper foundation" for the testimony. *Mattox*, 157 Idaho at 473, 337 P.3d at 632. The statute prescribes the foundation required for such testimony:

> (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed . . . .

I.C. § 6-1013. "Rule 56(e) of the Idaho Rules of Civil Procedure imposes additional requirements upon the admission of expert medical testimony submitted in connection with a motion for summary judgment." *Dulaney*, 137 Idaho at 164, 45 P.3d at 820. "The party offering an affidavit must show that the facts set forth therein are admissible, that the witness is competent to testify regarding the subject of the testimony, and that the testimony is based on personal knowledge." *Mattox*, 157 Idaho at 473, 337 P.3d at 632. "Statements that are conclusory or speculative do not satisfy either the requirement of admissibility or competency under Rule 56(e)." *Dulaney*, 137 Idaho at 164, 45 P.3d at 820.

"Thus, the medical expert must show that he or she is familiar with the standard of health care practice for the relevant medical specialty, during the relevant timeframe, and in the community where the care was provided." *Bybee*, 157 Idaho at 174, 335 P.3d at 19. "Further, the medical expert must explain '*how* he or she became familiar with that standard of care.'" *Id.* (quoting *Dulaney*, 137 Idaho at 164, 45 P.3d at 820).

The district court concluded the Samples had failed to establish that Dr. Birkenhagen was actually familiar with the local standard of care that applied in Blackfoot in 2009. The district court found that although Dr. Birkenhagen and Dr. Hanson were both board-certified surgeons, Dr. Hanson did not hold himself out to be board certified in 2009 because he allowed his certification to lapse in 2008. Additionally, the district court concluded that although Dr. Birkenhagen worked at BMH in 2011, he made no attempt to familiarize himself with the local standard of care in Blackfoot in 2009 or make any inquiries into whether the local standard of care deviated from the national standard.

The Samples contend that experts are not confined to some formulaic process for becoming familiar with the community standard of health care practice and affidavits are not

required to include particular phrases in order to establish adequate foundation under Idaho Code section 6-1013. The Samples are correct. As we recently stated, "[t]his Court does not require that an affidavit include particular phrases or state that the expert acquainted himself or herself with the applicable standard of care in some formulaic manner in order to establish adequate foundation under Section 6–1013." *Mattox*, 157 Idaho at 473–74, 337 P.3d 632–33. Although no "magic language" is required to demonstrate the requisite familiarity with the applicable standard of health care practice, the testimony of the proffered expert must meet minimum requirements as a prerequisite to admission of that expert's opinion.

Before proceeding, it is necessary to make some pertinent observations regarding the grounds upon which the district court found Dr. Birkenhagen's knowledge of the standard of care to be lacking. In his affidavit, Dr. Birkenhagen stated, in essence, that the standard of care applicable to Dr. Hanson at the time of the surgery in 2009 was a basic or "universal" standard of care because Dr. Hanson held himself out to be a member of the American College of Surgeons and a board-certified surgeon. The district court observed that "this opinion was offered in the mistaken belief that Hanson was board certified at the time of the surgery. There is no evidence Hanson held himself out to be board certified at the time of surgery."

The issue of whether a national standard of care applies to a board-certified physician, rather than some lesser local standard of care, was extensively addressed by this Court in *Buck v. St. Clair*, 108 Idaho 743, 902 P.2d 781 (1985). In that case, the Court said:

> We believe that for board-certified specialists, the local standard of care is equivalent to the national standard of care. Our reasons for this decision are simple: board-certified medical specialists are highly-trained individuals who become certified after completing a rigorous training program. Medical schools are accredited by a national team of physicians and administrators. The residency training programs are approved by a single board of specialists, and a physician is certified as a specialist only after passing a nationally administered exam consisting of both oral and written components. The board-certified specialists practicing within the state are the product of nationally designed education programs. The standard of care familiar to any board-certified physician in this state is a national standard of care. We see no reason to believe there is a local standard of care which deviates from the national standard of care for board-certified physicians. Our ruling today is limited to board-certified doctors practicing in the same area of specialty.

*Id.* at 745, 702 P.2d at 783.

After having stated that board-certified specialists were held to a national standard of care because of their rigorous training, the Court said that its holding "is limited to those physicians

who hold themselves out as board-certified specialists." *Id.* The limitation to those who hold themselves out as board-certified specialists seems to be at odds with the Court's determination that such specialists are held to a national standard because of their rigorous training. The Court explains the "holding out" limitation by quoting language in Idaho Code section 6-1012:

> Such individual providers of health care shall be judged in such cases in comparison with similarly trained and qualified providers of the same class in the same community, taking into account his or her training, experience, and fields of medical specialization, if any.

*Id.* The Court continued:

> By enacting this section [I.C. § 6-1012] we believe the legislature, in its wisdom, recognized that the standard of care for nationally board-certified specialists was the same throughout our nation and that one board-certified specialist could testify regarding the standard of care against another nationally board-certified specialist practicing in the same area of medicine.

*Id.* at 745–46, 702 P.2d at 783–84. It is not clear where the Court found the "holding out" limitation in the statutory language. The statute is merely concerned with training and experience.

A "holding out" limitation would read something into the statute that is not there. It would produce the anomalous result that a physician who was not board certified but held himself or herself out to be would have to comply with that standard, whereas an actual board-certified physician who did not tout his or her qualifications would be held to a lesser standard. This does not particularly make sense and we, therefore, eliminate the "holding out" requirement with respect to physicians who are actually board certified in a specialty, whether or not they hold themselves out to be. If a person wrongly represents being board certified, he or she ought to be held to that standard. On the other hand, if a person has received the rigorous training and become board certified, he or she ought to live up to that standard.

In any event, Dr. Birkenhagen stated in his affidavit that he was advised that Dr. Hanson "asserts that he is a member of the American College of Surgeons since 1977 and a board certified surgeon from 1977 until his retirement in 2011 when I was hired to replace him." He opined that "a surgeon who holds himself out as a board certified surgeon and a member of the American College of Surgeons thereby holds himself out to adhere to certain standards of care required of members of the American College of Surgeons and board certified surgeons." Dr. Birkenhagen's belief that Dr. Hanson was board certified until 2011 appears to have been based upon Dr. Hanson's 2011 discovery response that he had "[p]assed General Surgery Boards three

times starting in 1977" and that he was a "[m]ember of the American College of Surgeons, 1977 to present." In December 2013, during litigation over the defendant's motion to strike, which was converted to a motion for summary judgment, Dr. Hanson submitted an affidavit to accompany the Defendants' reply memorandum, stating for the first time in the record that his board certification had expired in 2008 because he was anticipating retirement. Thus, Dr. Hanson was board certified for the 30 years preceding the year of the surgery in this case. Presumably, the lack of board certification during the one year between the lapse of his certification and the surgery did not result in a precipitous decline in the standard of surgical performance expected of him because of his past rigorous training or what might have been expected of him as a continuing member of the American College of Surgeons. Even if one were concerned that Dr. Hanson was not a board-certified surgeon at the time of the operation, he was still a member of the American College of Surgeons and Dr. Birkenhagen's affidavit states that the care he rendered to Mr. Samples was violative of that organization's standard of care.

The issue before this Court is whether Dr. Birkenhagen's affidavit "alleges facts which, taken as true, show the proposed expert has actual knowledge of the applicable standard of care." *Mattox*, 157 Idaho at 474, 337 P.3d at 633. "In addressing that question, courts must look to the standard of care at issue, the proposed expert's grounds for claiming knowledge of that standard, and determine—employing a measure of common sense—whether those grounds would likely give rise to knowledge of that standard." *Id.* We hold that Dr. Birkenhagen's affidavit does establish that he had actual knowledge of the applicable standard of care and that the district court abused its discretion in concluding that the Samples did not lay an adequate foundation to admit his testimony.

There can be no doubt that Dr. Birkenhagen became aware of the standard of care in the vicinity of BMH in April or May of 2011. In his affidavit, Dr. Birkenhagen states that he was employed by BMH to replace Dr. Hanson as a general surgeon in August 2011. He states that he had been granted privileges at BMH three to four months earlier. He states the belief that,

> the minimum standard of care in Blackfoot, Idaho at Bingham Memorial Hospital was no different in 2009 than when I arrived in 2011, based upon my review of my immediate predecessor, Dr. Ray W. Hanson's qualifications and the standards expected of a similarly qualified surgeon. This opinion is based on the credentials of Dr. Hanson and the fundamental care expected of a surgeon such as Dr. Hanson, providing surgical care in the community of Blackfoot, Idaho.

It is true that Dr. Birkenhagen did not specifically inquire of another physician who was familiar with the standard of care at BMH in October of 2009. However, this case does not present a situation where an out-of-area doctor is required to become familiar with the local standard of care by consulting with a local physician. Dr. Birkenhagen replaced Dr. Hanson as general surgeon at BMH a mere 22 months after the incident at issue. Dr. Birkenhagen practiced in that role at BMH for 25 months until he signed his affidavit on November 19, 2013. In the interim, he fully reviewed the files of BMH and Dr. Hanson regarding the care provided to Mr. Samples. Having been granted privileges at BMH just a year and a half after Mr. Samples' operation and then having served at BMH as Dr. Hanson's replacement for over two years, it would certainly seem to be a matter of common sense that Dr. Birkenhagen would have had ample opportunity to become familiar with the previous standard of care for general surgery at BMH.

Additionally, the standard of care Dr. Birkenhagen attributes to surgeons who are members of the American College of Surgeons and have been board certified is largely a matter of common sense. He states:

> Among other things, this standard of care requires that the surgeon stay with his patient post-surgery and attend to, examine, and follow closely certain indications of infection or complication that will lead to patient sepsis. Those indicators include conducting and reviewing tests including blood work for changes in white blood count and "bands" revealed in the blood work indicative of infection.

> The standard of a board certified surgeon and a member of the American College of Surgeons also dictates the use of a full spectrum anaerobic antibiotic during post-surgery recovery of the patient to combat or prevent infection.

> When these factors and others indicate post-surgical complications and/or infection, a surgeon, especially one that is board certified and a member of the American College of Surgeons, would be expected to examine and/or reopen the patient's surgical site to rule out infection and/or sepsis. This is especially true in a patient such as David Samples where Dr. Hanson tore the transverse colon while performing a laparoscopic cholecystectomy and, therefore, was aware that stool and other contaminants had been allowed into Mr. Samples' belly.

> This standard of care was not met by Dr. Hanson in his treatment of David Samples in 2009. This standard of care is universal of any surgeon, but especially of a board certified surgeon and member of the American College of Surgeons. It also was the standard of care that was in effect in Blackfoot, Idaho upon my arrival in 2011.

9

Dr. Hanson ignored indications in the blood work including extremely high 'bands" of twenty (20) to thirty (30) percent, which is an alarmingly high. Dr. Hanson appears to have turned the patient over to an internist or hospitalist, Dr. Llinas. Dr. Hanson did not reopen Mr. Samples' surgical site, nor did he transfer Mr. Samples to Portneuf Medical Center. The transfer late on October 4[th] was for pulmonary consult by Dr. Llinas indicating Dr. Hanson was unaware, even at that late date, of Mr. Samples' septic condition.

I was consulted at Portneuf medical Center upon David Samples' arrival. I opened and exposed the surgical site and immediately removed significant puss and found other obvious signs of infection. Mr. Samples was septic a condition that had been developing for some time.

I have reviewed the Bingham Memorial records of David Samples' treatment by Dr. Hanson. It is clear that Dr. Hanson did not know David Samples was septic and infected at the time of his transfer, since he was transferred for a pulmonary consult for respiratory distress. I also note that post-surgery Dr. Hanson's prescribed antibiotics were inadequate to combat the obvious risk of infection. Further, the records from Bingham Memorial Hospital reflect David Samples' blood work following the October 2nd surgery showed white blood count and "band" variation, which should have been obvious indications of infection and sepsis. It does not appear that Dr. Hanson at any time either reviewed the blood work results or, if he reviewed them, ignored the obvious indications of infection.

(emphasis added).

This is not a complicated standard of care. It merely calls for basic post-operative care to ensure that the patient does not suffer infection or complications. It is not a standard of care that requires detailed specialization, intricate treatments, expensive equipment, or detailed knowledge of drug interactions. One would hope that any surgeon, regardless of whether operating in the backwoods or a metropolitan hospital, would monitor the patient post-operatively to ensure a decent recovery without infection or complications. That didn't happen with Mr. Samples, as outlined by Dr. Birkenhagen.

We hold that Dr. Birkenhagen's affidavit sufficiently showed that he had actual knowledge of the applicable standard of care and, therefore, the district court abused its discretion in concluding that the Samples had not laid an adequate foundation for his testimony.

**B.      Neither party is entitled to attorney's fees on appeal.**

Both parties request attorney fees pursuant to Idaho Code section 12-121. Idaho Code section 12-121 provides: "In any civil action, the judge may award reasonable attorney's fees to

10

the prevailing party or parties . . ." I.C. § 12-121. "To receive an I.C. § 12-121 award of fees, the entire appeal must have been pursued frivolously, unreasonably, and without foundation." *Snider v. Arnold*, 153 Idaho 641, 645, 289 P.3d 43, 47 (2012). "Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the trial court incorrectly applied well-established law." *City of Boise v. Ada Cnty.*, 147 Idaho 794, 812, 215 P.3d 514, 532 (2009). "Ordinarily, attorney fees will not be awarded where the losing party brought the appeal in good faith and where a genuine issue of law was presented." *Nelson v. Nelson*, 144 Idaho 710, 718, 170 P.3d 375, 383 (2007).

Here, Dr. Hanson is not the prevailing party on appeal and therefore is not entitled to an award of fees. Although the Samples have prevailed in this appeal, we find that Dr. Hanson presented a genuine issue of law as to the prerequisites for an expert to become familiar with the community standard of health care practice in a medical malpractice action. Therefore, we decline to award the Samples attorney fees.

## IV. CONCLUSION

We vacate the district court's grant of summary judgment in favor of Dr. Hanson and remand the case for further proceedings. Costs on appeal are awarded to the Samples.

Justices BURDICK and W. JONES CONCUR.

HORTON, J., dissenting.

I respectfully dissent. Today the Court has ignored the approach we have traditionally taken to the review of discretionary decisions and usurped the discretionary powers of the trial court. In doing so, I believe that the Court has repeated the error that it committed four years ago in *Nield v. Pocatello Health Servs., Inc.*, 156 Idaho 802, 332 P.3d 714 (2014). Then, I summarized my perception of the Court's decision as follows:

> The majority correctly states and applies our rule that the determination of the admissibility of evidence offered "in support of or in opposition to a motion for summary judgment is a threshold question to be answered before applying the liberal construction and reasonable inferences rule to determine whether the evidence is sufficient to create a genuine issue for trial." *J–U–B Engineers, Inc. v. Sec. Ins. Co. of Hartford*, 146 Idaho 311, 314–15, 193 P.3d 858, 861–62 (2008) (citing *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 13, 175 P.3d 172, 175 (2007)). However, although the majority correctly states the standard of review governing this threshold question of the admissibility of evidence, I believe that it has failed to apply that standard in deciding this case.

11

*Id.* at 852, 332 P.3d at 764. As it did in *Nield*, the Court acknowledges that the admissibility of expert testimony is a threshold issue which is reviewed for abuse of discretion. The Court also correctly recites the long-standing three part test that we employ to evaluate whether a trial court has abused its discretion, i.e., whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason. *See, e.g. Parks v. Safeco Ins. Co. of Illinois*, 160 Idaho 556, 561, 376 P.3d 760, 765 (2016).

The Court's opinion does not conclude that the district court failed to perceive the question of the admissibility of Dr. Birkenhagen's testimony as committed to its discretion. The Court does not hold that the district court's decision fell without the outer boundaries of its discretion. The Court does not identify a failure of the district court to apply the correct legal standards governing its decision. The Court does not suggest that the district court failed to exercise reason in reaching its decision. Instead, the Court has reviewed the facts contained in Dr. Birkenhagen's affidavit and concluded: "We hold that Dr. Birkenhagen's affidavit does establish that he had actual knowledge of the applicable standard of care and that the district court abused its discretion in concluding that the Samples did not lay an adequate foundation to admit his testimony."

In short, the Court has considered the same facts as did the district court and reached a different conclusion. The practical result is that the Court has employed a de novo standard of review rather than the deferential standard of review that we have traditionally applied. In doing so, the Court has failed to recognize the district court's "broad discretion" in determining the admissibility of evidence, *see, e.g., Warren v. Sharp*, 139 Idaho 599, 605, 83 P.3d 773, 779 (2003), overruled on other grounds in *Blizzard v. Lundeby*, 156 Idaho 204, 322 P.3d 286 (2014), and has departed from our traditional consideration of the process by which the trial court reached its decision rather than the product of the trial court's decision-making process. In *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986), this Court explained:

> We have long held that the appellate court should not substitute its discretion for that of the trial court. Implicit in this principle is the truism that the appellate court should not simply focus upon the results of a discretionary decision below, but rather upon the process by which the trial court reached its discretionary decision.

*Quick v. Crane,* 111 Idaho 759, 772, 727 P.2d 1187, 1200 (1986). *See also Hudelson v. Delta Int'l Mach. Corp.*, 142 Idaho 244, 248, 127 P.3d 147, 151 (2005) ("[W]e primarily focus upon the process used by the trial judge in reaching his or her decision, not upon the result of that decision.").

Further, the Court has departed from usual practice in a second manner. When a trial court has erred in making a discretionary decision, this Court does not reverse. As Judge Burnett observed, "When a judge improperly exercises discretion due to a legal error, the appellate remedy ordinarily is not to usurp the judge's authority by exercising such discretion ourselves. Rather, it is to remand the case for reconsideration in light of the correct legal standard." *Evans v. Sawtooth Partners*, 111 Idaho 381, 387, 723 P.2d 925, 931 (Ct.App. 1986). This Court has likewise held that, "when the discretion exercised by a trial court is affected by an error of law," this Court's "role is to note the error made and remand the case for appropriate findings." *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 15–16, 175 P.3d 172, 177–78 (2007). *See also Eby v. State*, 148 Idaho 731, 737, 228 P.3d 998, 1004 (2010) ("As this is a matter of discretion for the trial court, we vacate and remand to the trial court rather than reversing. 'This Court has held that when the discretion exercised by a trial court is affected by an error of law, our role is to note the error made and remand the case for appropriate findings.' ") (quoting *Gem State Ins. Co.*, 145 Idaho at 15–16, 175 P.3d at 177–78). Here, the Court has not identified a legal error by the trial court; instead, it has simply reached a different conclusion than did the trial court.

I conclude with a couple of observations. First, I do not think it necessary to explain why I do not believe that the district court abused its discretion. The Court's failure to explain how the district court decision failed to satisfy our three part standard of review speaks for itself. Second, I do not think it necessary to explain why I think that the district court reached the right conclusion. That is because if I had the authority to decide the admissibility of Dr. Birkenhagen's testimony as a matter of first impression, I would deem it admissible. However, the limited authority of an appellate judge considering a decision committed to the discretion of the trial court does not allow me to make that decision.

For the foregoing reasons, I respectfully dissent.

Justice EISMANN CONCURS.

13