# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47165

DEBRA DLOUHY, individually, and as surviving spouse of Duane Dlouhy; DUSTIN DLOUHY, individually, and as Personal Representative of the Estate of Duane Dlouhy; DRUE HATFIELD, individually; and DEMI DLOUHY, individually,

    Plaintiffs-Appellants,

v.

KOOTENAI HOSPITAL DISTRICT, doing business as KOOTENAI HEALTH, KOOTENAI CLINIC, LLC,

    Defendants-Respondents,

and

JEFFREY M. ZUROSKY, M.D., HENRY G. AMON, M.D., ROBERT C. SEELEY, M.D., WESTERN MEDICAL ASSOCIATES, PLLC, NICOLE S. BURBANK, M.D., JOHN DOE I-X, JANE DOE I-X, and UNKNOWN BUSINESS ENTITIES I through X,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2020 Term

Opinion Filed: October 19, 2020

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Cynthia K. C. Meyer, District Judge.

The district court's order is <u>reversed in part,</u> the judgment is <u>vacated,</u> and the case is <u>remanded</u> for further proceedings consistent with this opinion.

Pedersen and Whitehead, Twin Falls, for Appellants. Michael J. Hanby argued.

Witherspoon Kelley, Coeur d'Alene, for Respondents. Joel P. Hazel argued.

---

1

BURDICK, Chief Justice.

This is a medical malpractice case arising out of treatment received by Duane Dlouhy from the Kootenai Hospital District d/b/a/ Kootenai Health ("Kootenai Health"). Debra Dlouhy, Dustin Dlouhy, individually and as Personal Representative of the Estate of Duane Dlouhy, Drue Hartfield, and Demi Dlouhy ("the Dlouhys") appeal from an order of the Kootenai County district court granting summary judgment in favor of Kootenai Health. The district court granted summary judgment in favor of Kootenai Health on the Dlouhys' cause of action for medical malpractice after determining that the Dlouhys had failed to provide adequate foundation showing that their expert witnesses had actual knowledge of the community standard of care.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The events leading to the Dlouhys' cause of action began in May 2015 when Duane Dlouhy went to the emergency department at Kootenai Health because of rectal bleeding. Dr. Robert Seeley performed a CT scan and found "no obvious mass" but noted that "dark red blood" was present. The radiologist charted that a "neoplasm cannot be excluded." After Dr. Seeley consulted with Dr. Michael James, Mr. Dlouhy was discharged from the hospital and went home.

Several hours later, at around 2:14 a.m., Mr. Dlouhy went back to the hospital after the rectal bleeding began again and his wife found him passed out in the bathroom. He was seen by another doctor who charted in his notes that Mr. Dlouhy had a CT scan done earlier that day that revealed "some thickening of the lateral aspect of the rectum." Dr. James performed a colonoscopy on Mr. Dlouhy, but was unable to get a complete view of the rectum. Dr. James suspected that the rectal bleeding was diverticular and noted a large amount of blood and clotting in the mid-ascending colon. Mr. Dlouhy was discharged from the hospital and followed up with his primary care provider on June 16, 2015.

Mr. Dlouhy had additional follow-up appointments related to his gastrointestinal issues on June 30, 2015, September 1, 2015, and January 26, 2016. The possibility that Mr. Dlouhy had colorectal cancer was not discussed or charted at any of the follow-up appointments. In August 2016, Mr. Dlouhy was diagnosed with stage IV colorectal cancer.

On May 23, 2017, the Dlouhys filed a complaint against Kootenai Clinic, LLC, Susan E. Hildebrandt, NP, and James P. McMahon, PA-C, alleging medical malpractice. Mr. Dlouhy passed away from colorectal cancer shortly thereafter, on June 5, 2017, and an amended

complaint was filed on November 14, 2017, adding his children as parties to the action and adding Kootenai Health, Jeffrey M. Zurosky, MD, Henry G. Amon, MD, Robert C. Seeley, MD, Western Medical Associates, PLLC, and Nicole S. Burbank, MD, as defendants. Pursuant to a stipulation of the parties, the Dlouhys filed a second amended complaint in January 2018, removing Susan E. Hildebrandt, NP, and James P. McMahon, PA-C, as named defendants. In July 2018, the district court entered two judgments pursuant to a stipulation of the parties dismissing the Dlouhys' claims against Jeffrey M. Zurosky, MD, Henry G. Amon, MD, Robert Seeley, MD, Western Medical Associates, PLLC, and Nicole S. Burbank, MD, leaving Kootenai Health as the sole defendant in the medical malpractice action.

James McMahon, PA, Susan Hildebrandt, NP, and Michael James, MD, were deposed on August 2, 2018. In February 2019, the Dlouhys disclosed their expert witnesses, two of whom, Kenneth J. Hammerman, MD, and Judy L. Schmidt, MD, were retained to testify as to the standard of care. On March 20, 2019, Kootenai Health filed a motion for summary judgment on the Dlouhys' remaining medical malpractice claim. In support of its motion for summary judgment, Kootenai Health argued that the Dlouhys failed to establish an essential element of their case because they had not disclosed an expert witness with "actual knowledge" of the applicable community standard of care. The Dlouhys filed their response and supporting materials on April 3, 2019, and the district court held oral argument on the motion two weeks later.

Based on a discussion at oral argument, the parties stipulated that the Dlouhys' claims against Kootenai Health were "limited to claims of vicarious liability for the acts or omissions of Kootenai Health employees Michael James, MD, James McMahon, [PA], and Susan Hildebrandt, [NP]." On June 3, 2019, the district court granted Kootenai Health's motion for summary judgment on the grounds that the Dlouhys failed to establish a prima facie medical malpractice claim under Idaho Code sections 6-1012 and 6-1013. The district court entered a judgment dismissing the Dlouhys' claim against Kootenai Health on June 5, 2019, and an amended judgment awarding costs to Kootenai Health was entered on August 2, 2019. The Dlouhys timely appealed.

## II.    ISSUE ON APPEAL

Did the district court err in granting Kootenai Health's motion for summary judgment on the grounds that the Dlouhys failed to provide sufficient expert testimony as to the community standard of care?

3

# III. STANDARD OF REVIEW

"On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion." *Mattox v. Life Care Ctrs. of Am., Inc.*, 157 Idaho 468, 472, 337 P.3d 627, 631 (2014) (quoting *Arregui v. Gallegos–Main*, 153 Idaho 801, 804, 291 P.3d 1000, 1003 (2012)). Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "When considering whether the evidence shows a genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences in favor of the nonmoving party." *Mattox*, 157 Idaho at 473, 337 P.3d at 632 (citations omitted).

"The admissibility of expert testimony, however, is a threshold matter that is distinct from whether the testimony raises genuine issues of material fact sufficient to preclude summary judgment." *Arregui*, 153 Idaho at 804, 291 P.3d at 1003 (citing *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163, 45 P.3d 816, 819 (2002)). With regard to admissibility, "the liberal construction and reasonable inferences standard does not apply . . . ." *Mattox*, 157 Idaho at 473, 337 P.3d at 632 (quoting *Dulaney*, 137 Idaho at 163, 45 P.3d at 819). Rather, the district court "must look at the witness' affidavit or deposition testimony and determine whether it alleges facts which, if taken as true, would render the testimony of that witness admissible." *Id.*

"Unless there has been a clear abuse of discretion," we will not disturb the district court's evidentiary rulings. *Navo v. Bingham Mem'l Hosp.*, 160 Idaho 363, 369–70, 373 P.3d 681, 687–88 (2016) (quoting *Mattox*, 157 Idaho at 473, 337 P.3d at 632). We use the four-part standard set out in *Lunneborg v. My Fun Life* to determine whether a district court has abused its discretion. 163 Idaho 856, 421 P.3d 187 (2018). Specifically, we ask whether the district court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Id.* at 863, 421 P.3d at 194 (citation omitted).

## IV. ANALYSIS

**A. The district court erred in granting Kootenai Health's motion for summary judgment on the grounds that the Dlouhys failed to provide sufficient expert testimony as to the community standard of care.**

The district court granted Kootenai Health's motion for summary judgment on the grounds that the Dlouhys failed to establish an essential element of their medical malpractice claim. Specifically, the district court ruled that the Dlouhys did not provide adequate foundation to show that their expert witnesses had "actual knowledge" of the community standard of care.

A plaintiff bringing a medical malpractice claim must provide expert testimony demonstrating that the defendant healthcare provider(s) did not meet the applicable community standard of care:

> In any case, claim or action for damages due to injury to or death of any person, brought against any physician and surgeon or other provider of health care, including, without limitation, any . . . physicians' assistant [or] nurse practitioner . . . or any person vicariously liable for the negligence of them or any of them, on account of the provision of or failure to provide health care or on account of any matter incidental or related thereto, such claimant or plaintiff must, as an essential part of his or her case in chief, affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence . . . and as such standard then and there existed with respect to the class of health care provider that such defendant then and there belonged to and in which capacity he, she or it was functioning.

I.C. § 6-1012.

For an expert to testify as to the applicable community standard of care, he or she must have actual knowledge of the community standard as it existed "at the time and place of the alleged negligence." *Navo v. Bingham Mem'l Hosp.*, 160 Idaho 363, 370, 373 P.3d 681, 688 (2016) (citing I.C. § 6-1013).

> The applicable standard of practice and such a defendant's failure to meet said standard must be established in such cases by such a plaintiff by testimony of one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert

5

witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with *actual knowledge of the applicable said community standard* to which his or her expert opinion testimony is addressed . . . .

I.C. § 6-1013 (emphasis added).

Under Idaho Code sections 6-1012 and 6-1013, a medical malpractice plaintiff may establish the standard of care element of her claim with one of two types of experts: a local expert or an out-of-area expert. To establish the standard of care using a local expert, the plaintiff must simply provide expert testimony from a healthcare provider who practices in the same community as the defendant healthcare provider and has actual knowledge of the community standard of care that was applicable to the defendant. *See* I.C. § 6-1013.

Anticipating that medical malpractice plaintiffs will sometimes have difficulty procuring a local expert to testify as to the community standard of care, the Legislature also provided for the use of out-of-area experts. *See* I.C. § 6-1013 ("[T]his section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial.").

An out-of-area expert must show that he or she is familiar with the applicable community standard of care before testifying as to that standard in a medical malpractice action. *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 164, 45 P.3d 816, 820 (2002) (citations omitted). The out-of-area expert must also explain *how* he or she became familiar with the community standard of care. *Id.* When it comes to determining whether an expert witness has actual knowledge of the applicable community standard of care:

> The guiding question is simply whether the affidavit alleges facts which, taken as true, show the proposed expert has actual knowledge of the applicable standard of care. In addressing that question, courts must look to the standard of care at issue, the proposed expert's grounds for claiming knowledge of that standard, and determine—employing a measure of common sense—whether those grounds would likely give rise to knowledge of that standard. The obligation to demonstrate actual knowledge of the local standard of care is not intended to be "an overly burdensome requirement...." *Frank v. E. Shoshone Hosp.*, 114 Idaho 480, 482, 757 P.2d 1199, 1201 (1988). Nor is the standard static and firmly rooted in past medical practices. Standards of care are sensitive to evolving changes in the way health care services

6

> are delivered in the various communities of our State. Indeed, the Court has recognized that "governmental regulation, development of regional and national provider organizations, and greater access to the flow of medical information," have provided "various avenues by which a plaintiff may proceed to establish a standard of care...." *Suhadolnik v. Pressman*, 151 Idaho 110, 121, 254 P.3d 11, 22 (2011).

*Mattox v. Life Care Ctrs of Am., Inc.*, 157 Idaho 468, 474, 337 P.3d 627, 633 (2014).

Both of the Dlouhys' experts in this case were out-of-area experts. The district court determined that neither of them had demonstrated actual knowledge of the community standard of care. We address each determination in turn.

1. The district court abused its discretion in determining that Hammerman had not adequately familiarized himself with the community standard of care.

Kenneth J. Hammerman, MD, was retained by the Dlouhys to provide an expert opinion as to the applicable standard of care. The district court concluded that the Dlouhys failed to show that Hammerman had actual knowledge of the applicable community standard of care because the depositions he claimed to rely upon in familiarizing himself with the community standard were not sufficient to establish any standard of care.

Hammerman currently practices gastroenterology and internal medicine in a private practice in San Francisco, California. Hammerman is board certified in both internal medicine and gastroenterology through the American Board of Internal Medicine. Hammerman testified in his deposition that he has never been licensed to practice nor practiced medicine in Idaho. As an out-of-area expert, Hammerman claims to have familiarized himself with the community standard of care by reviewing the depositions of Michael James, MD, James McMahon, PA, Susan Hildebrandt, NP, and David Bartles, MD, as well as Kootenai Health's policies and procedures. In his deposition, Hammerman testified that he had not consulted with anyone in the State of Idaho or in Kootenai County about the Dlouhys' case and that while he reviewed a number of Idaho statutes, they did not help form his opinions.

Hammerman testified in his deposition that the standard of care requires a gastroenterologist who conducts a colonoscopy, but does not get a complete view of the rectum, to schedule a follow-up colonoscopy or flexible sigmoidoscopy. He explained that the follow-up colonoscopy or flexible sigmoidoscopy does not have to take place immediately, but should occur within a month of the original colonoscopy. Hammerman also testified that the national standard of care was applicable to James because he is board certified in gastroenterology.

7

On appeal, the Dlouhys argue that "for board-certified physicians, there is a national standard of care." They argue that James was subject to the national standard of care that applies to board-certified gastroenterologists, and that Hammerman has actual knowledge of the applicable national standard because he holds the same board certification as James.

This Court recently acknowledged that "for board-certified specialists, the local standard of care is equivalent to the national standard of care." *Phillips v. E. Idaho Health Servs.*, 166 Idaho 731, 747, 463 P.3d 365, 381 (2020) (quoting *Buck v. St. Clair*, 108 Idaho 743, 745, 702 P.2d 781, 783 (1985)); *see also Samples v. Hanson*, 161 Idaho 179, 384 P.3d 943 (2016). However, board-certified specialists are not automatically subject to the national standard of care by virtue of their certification. *See Buck*, 108 Idaho at 746, 702 P.2d at 784; *Grimes v. Green*, 113 Idaho 519, 521–22, 746 P.2d 978, 980–81 (1987) (implying that "the clear mandate of I.C. § 6-1012" requires evidence that the local standard of care does not deviate from the national standard of care before a defendant who is board certified can be held to the national standard). Rather, for an out-of-area expert to testify that a national standard of care applied to the defendant specialist by virtue of his certification, two elements must be met. *Buck*, 108 Idaho at 746, 702 P.2d at 784. First, the out-of-area expert must be "board-certified in the same specialty as that of the defendant-physician." *Id.* This demonstrates that the out-of-area expert has "knowledge of the appropriate standard of care of board-certified physicians practicing in the specialty in question." *Id.* Second, "an out-of-the-area [expert] must inquire of the local standard in order to insure there are no local deviations from the national standard under which the defendant-physician and witness-physician were trained." *Id.*

The Dlouhys argue that this Court, in *Samples v. Hanson*, eliminated altogether the second requirement that an out-of-area expert verify that the local standard does not deviate from the national standard under which he and the defendant-physician were trained. 161 Idaho 179, 384 P.3d 943 (2016). However, the Dlouhys misunderstand the holding from *Samples v. Hanson*. In that case, we clarified that specialists who are board certified, but who do not hold themselves out as such, can still be held to a national standard of care. *Id.* at 184–85, 384 P.3d at 948–49. The defendant surgeon in *Samples v. Hanson* was certified by a national board, but, at the time of the alleged malpractice, no longer held himself out as a board-certified surgeon because he had allowed his certification to lapse the year before the plaintiff's surgery took place. *Id.* at 183, 384 P.3d at 947. The district court, following this Court's opinion in *Buck v. St. Clair*, reasoned that

8

the defendant surgeon could not be held to the national standard of care applicable to board-certified surgeons because he did not hold himself out as board certified at the time of the surgery. *Id.*; *see also Buck*, 108 Idaho at 745, 702 P.2d at 783 (explaining that the Court's holding that board-certified specialists could be held to a national standard of care is "limited to those physicians who hold themselves out as board-certified specialists"). Given the opportunity to review *Buck v. St. Clair*, this Court explained that it had read a "holding out" requirement into Idaho Code section 6-1012 that simply was not there. *Samples*, 161 Idaho at 183–84, 384 P.3d at 947–48. Accordingly, this Court eliminated the "holding out" requirement, reasoning that "if a person has received the rigorous training and become board certified, he or she ought to live up to that standard." *Id.* at 184, 384 P.3d at 948. After eliminating the "holding out" requirement, this Court went on to explain that there was "no doubt" that the plaintiff's expert was aware of the local standard of care because he began practicing at the same hospital less than two years after the defendant's alleged malpractice took place. *Id.* at 185, 384 P.3d at 949. Because the plaintiff's expert had actual knowledge of the local standard of care by virtue of his subsequent employment at the same hospital where the alleged malpractice occurred, the Court explained that the case did not "present a situation where an out-of-area doctor is required to become familiar with the local standard of care by consulting with a local physician." *Id.* As such, the Court did not determine whether the two elements for determining whether an expert may testify that a national standard of care had replaced the local standard were met, nor did it overrule them. Thus, *Samples v. Hanson* stands, in part, for the proposition that a board-certified specialist can be held to a national standard of care, regardless of whether the specialist holds himself out as board certified. It does not, as the Dlouhys argue, hold that board-certified specialists are *automatically* subject to a national standard of care.[1]

Turning now to the present case, so long as the two requirements from *Buck v. St. Clair* are met, *i.e.*, the defendant specialist and the plaintiffs' expert are board certified in the same specialty and the out-of-area expert inquires of the local standard to insure that it does not

_____

[1] Nor does this Court's recent opinion in *Phillips v. Eastern Idaho Health Services, Inc.*, hold as such. 166 Idaho 731, 463 P.3d 365 (2020). In that case, we "acknowledged that 'for board-certified specialists, the local standard of care is equivalent to the national standard of care.'" *Id.* at 747, 463 P.3d at 381 (quoting *Buck*, 108 Idaho at 745, 702 P.2d at 783). However, we went on to clarify *Samples v. Hansen*, explaining that a defendant-physician's board eligibility was not sufficient to hold him to a national standard of care. *Id.* Because the defendant-physician in *Phillips* was only board eligible, not board certified, he could not be held to a national standard of care applicable to board-certified physicians. *Id.* As such, we had no occasion to apply or overrule the two elements from *Buck v. St. Clair*.

9

deviate from the national standard, the out-of-area expert may testify as to the national standard of care that was applicable to the defendant specialist.

Here, the first requirement has been met. James and Hammerman are both certified, by the same national board, in the same specialty, gastroenterology. Therefore, the question that remains is whether Hammerman sufficiently inquired of the community standard of care in Coeur d'Alene in 2015 to insure that it does not deviate from the national standard of care with which he is familiar. *See Buck*, 108 Idaho at 746, 702 P.2d at 784. As mentioned above, Hammerman did not consult with any experts from the Coeur d'Alene area to familiarize himself with the standard of care in the community. However, we conclude that Hammerman learned that the community standard of care for board-certified gastroenterologists in Coeur d'Alene did not deviate from the national standard by reviewing Dr. James's deposition.

"An expert's review of a deposition stating that the local standard does not vary from the national standard, coupled with the expert's personal knowledge of the national standard, is sufficient to lay a foundation for the expert's opinion." *Grover v. Smith*, 137 Idaho 247, 252, 46 P.3d 1105, 1110 (2002) (citations omitted).

Here, Dr. James testified in his deposition as follows:

> Q: Is there anything about the practice of gastroenterology in—with Kootenai or in Coeur d'Alene that is different than the way you practiced when you were doing your fellowship in San Francisco?
>
> A: I get to wear what I want.
>
> Q: Other than dress.
>
> A: Other than the blue—the blue shirt and blue coat, yeah.
>
> Q: The dress isn't military standard; is that—
>
> A: Right.
>
> Q: —what you're saying? Okay.
>
> A: *Otherwise, no.*

Thus, James explained in his deposition testimony that the only difference between when he practiced gastroenterology in San Francisco and where he now practices in Coeur d'Alene is that his clothes are different. Without more, James's testimony would not be sufficient to show that the community standard of care for board-certified gastroenterologists in Coeur d'Alene does not deviate from the national standard. However, Dr. James's testimony demonstrates that

the standard of care in Coeur d'Alene was the same as in San Francisco. Hammerman, who practices gastroenterology in San Francisco, would certainly have actual knowledge of whether the community standard there deviates from the national standard of care for board-certified gastroenterologists. Because Hammerman confirmed from reviewing James's deposition testimony that the community standard of care in Coeur d'Alene was the same as in San Francisco, and he had actual knowledge that board-certified gastroenterologists in San Francisco are held to the national standard, we conclude that Hammerman had actual knowledge that the community standard of care in Coeur d'Alene for board-certified gastroenterologists did not deviate from the national standard of care. Therefore, the district court abused its discretion in determining that Hammerman's opinion as to the standard of care lacked the requisite foundation.

   2.  <u>The district court did not abuse its discretion in determining that Schmidt's opinion as to the standard of care was inadmissible on summary judgment.</u>

Judy L. Schmidt, MD, was retained by the Dlouhys to provide expert opinions as to standard of care and medical causation. Schmidt is a licensed physician who practices in Hawaii. Before living and practicing in Hawaii, Schmidt was licensed to practice in Montana. Schmidt is board certified in internal medicine, hematology, and medical oncology. In her report, Schmidt listed at least fourteen ways in which she claimed James breached the standard of care. She also claimed that McMahon and Hildebrandt breached the standard of care in a number of ways. The district court concluded that the Dlouhys failed to show that Schmidt had actual knowledge of the applicable community standard of care because she never explicitly stated what the applicable standard of care was or explained how she became familiar with said standard.

The Dlouhys claimed in their expert witness disclosure that, like Hammerman, Schmidt reviewed the depositions of Michael James, MD, James McMahon, PA, Susan Hildebrandt, NP, and David Bartles, MD, in forming her opinions. They also claimed that she reviewed the medical records of Mr. Dlouhy and Kootenai Health's policies and procedures. Finally, the Dlouhys' claimed that Schmidt will "summarize the care outlined in the medical records and testified to by the doctors in this action."

The district court came to its decision that Schmidt's opinion on the standard of care lacked the requisite foundation to be admissible based upon its review of an unsworn report written by Schmidt and statements made about Schmidt in the Dlouhys' expert witness disclosures. Based on the record before this Court, it does not appear that Schmidt's deposition

11

was taken before the hearing on Kootenai Health's summary judgment decision, if at all. Nor did the Dlouhys submit an affidavit or declaration from Schmidt in response to Kootenai Health's motion for summary judgment. For this reason, we conclude that the district court correctly determined that Schmidt's expert opinion was not supported by adequate foundation.

Idaho Code section 6-1013 requires medical malpractice plaintiffs to establish the applicable standard of care through expert testimony. I.C. § 6-1013. Accordingly, "[t]o avoid summary judgment for the defense in a medical malpractice case, the plaintiff must offer *expert testimony* indicating that the defendant health care provider negligently failed to meet the applicable standard of health care practice." *Morrison v. St. Luke's Reg'l Med. Ctr.*, 160 Idaho 599, 605, 377 P.3d 1062, 1068 (2016) (emphasis added) (citation omitted). In evaluating the admissibility of an expert's opinion regarding the applicable standard of care at the summary judgment stage, "the trial court must look at the witness' *affidavit or deposition testimony* and determine whether it alleges facts which, if taken as true, would render the testimony of that witness admissible." *Phillips*, 166 Idaho at 741, 463 P.3d at 375 (quoting *Mattox*, 157 Idaho at 473, 337 P.3d at 632). In other words, it is the expert witness' own testimony about the practitioners she consulted with or other sources she reviewed that lays the foundation for her testimony regarding the applicable standard of care. Without such testimony, an expert witness' opinions on the standard of care are not admissible.

Here, Schmidt's expert witness disclosure is not expert *testimony*. *See Ciccarello v. Davies*, 166 Idaho 153, 161, 456 P.3d 519, 527 (2019) (holding that an expert witness disclosure in a legal malpractice case is not the same as a sworn declaration or affidavit). Expert witness disclosures are written by the parties' attorneys. While they may provide a preview of the disclosed expert witness' testimony, they are not sworn statements made by the expert themselves. An expert witness disclosure may certainly be referred to in an affidavit or during a deposition, but absent some form of testimony, any statement of the standard of care contained therein cannot be rightly attributed to the expert witness.

Likewise, Schmidt's report, though written by her, is not *testimony*. Unlike a deposition, affidavit, or declaration, Schmidt's report was not sworn to or made under oath. An expert's report may help to provide the basis for an expert's testimony, and may even be referred to or adopted by the expert in her affidavit, declaration, or deposition. But it cannot, standing alone, be used to establish the standard of care in a medical malpractice claim. Because Schmidt's

deposition had not been taken at the time the motion for summary judgment was heard, nor had the Dlouhys submitted an affidavit or declaration of Schmidt in response to Kootenai Health's motion for summary judgment, we conclude that the Dlouhys did not provide any admissible testimony from Schmidt regarding the community standard of care. Accordingly, the district court did not abuse its discretion in determining that Schmidt's opinion as to the standard of care was inadmissible for purposes of summary judgment.

3. Summary.

Although we conclude that Schmidt's opinion as to the community standard of care in Coeur d'Alene was inadmissible on summary judgment, we also conclude that Hammerman's opinion as to the community standard of care in Coeur d'Alene was admissible on summary judgment because the Dlouhys demonstrated that he had actual knowledge of a national standard of care from which the community standard did not deviate. Therefore, the district court abused its discretion in ruling that Hammerman's opinion as to the community standard of care was inadmissible, and erred in determining that the Dlouhys had not established the standard of care element of their medical malpractice claim.

## B. Attorney's Fees

Kootenai Health requests attorney's fees on appeal pursuant to Idaho Code section 12-121. The Dlouhys do not request attorney's fees on appeal. Idaho Code section 12-121 allows for the award of attorney's fees to the prevailing party. I.C. § 12-121. Because Kootenai Health is not the prevailing party on appeal, we decline to award it attorney's fees.

## V. CONCLUSION

For the reasons above, the district court erred in granting Kootenai Health's motion for summary judgment because Hammerman's testimony on the community standard of care was admissible on summary judgment. The district court did not abuse its discretion in determining that Schmidt's opinion as to the standard of care was inadmissible on summary judgment. The district court's order granting summary judgment is reversed in part, the final judgment dismissing the Dlouhys' medical malpractice claim is vacated, and the case is remanded for further proceedings consistent with this opinion. No costs are awarded on appeal.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR.**

13